*In re* MARRIAGE OF ROBERTA LEE DIETZ, Petitioner-Appellant, and KENNETH LOREN DIETZ, Respondent-Appellee.

Fifth District   No. 78-500

Opinion filed October 11, 1979.

Robert P. Schulhof, of Carbondale, for appellant.

Richard E. White, of Murphysboro, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Roberta Dietz McNeill and Kenneth Dietz each appeal from the judgment of the Circuit Court of Jackson County dissolving their marriage and disposing of the property of the parties by assigning nonmarital property and dividing marital property under section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503).

The judgment of dissolution was entered on February 7, 1978. The judgment of the court dividing the property of the parties was entered on August 19, 1978. Only the property disposition is assigned as error on appeal. As part of the disposition, Kenneth was ordered to pay Roberta $43,000 as her share of the marital home, which the parties valued at approximately $70,000, and to hold Roberta harmless on notes totaling approximately $7,000 she had co-signed during the marriage evidencing debts incurred in farming operations. The court also ordered the sale of farm machinery and livestock found to be marital property and an equal division of the proceeds. Roberta was denied any interest in 160 acres of farmland owned by Kenneth at the time of the marriage and mortgaged to his mother from whom it was purchased.

On appeal, Roberta asserts an interest in the farmland and also claims exclusive right to the marital home which is situated on the farmland property owned by Kenneth; Kenneth cross-appeals, contesting the amount awarded to Roberta as her share in the home and the division of the farm machinery and cattle. He also objects to relieving Roberta of the debts of the parties. We affirm.

We consider the claims of the parties under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) as the proceedings were concluded subsequent to the effective date of the Act. *In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804.

■■ The Act establishes a presumption that property acquired by either spouse during the marriage is marital property, regardless of the manner of holding title, unless the acquisition occurs through gift, bequest, devise, descent or there is a contrary agreement between the parties. (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).) The parties here agree that the marital home was built and paid for during the marriage and that they lived in the home as husband and wife. The house was built on farmland that Kenneth acquired in 1963. It appears that each party made material contributions to its construction, although the record indicates that the greater portion of the construction cost, estimated at $40,000 to $50,000, came from Roberta's funds acquired prior to the marriage. Roberta testified that she paid some $43,000 in bills for the home to be built. Kenneth expended considerable labor, according to his testimony, assisting and overseeing the home's construction. He stated that he also used some of his farm revenue for building expenses. Title to the home was in the husband's name only as it was built on the farmland he had acquired in his name prior to marriage. As we noted, however, the manner of holding title is of no consequence.

Relying on *Coates v. Coates* (1978), 64 Ill. App. 3d 914, 381 N.E.2d 1200, Roberta argues that because most of the construction costs came from accounts she acquired prior to marriage, the house should be considered her transmuted separate property. The property settlement in *Coates* involved rental property which had been purchased by the husband prior to marriage but converted to joint tenancy thereafter solely for the purpose of avoiding claims by an ex-wife. Acknowledging the general rule that a conveyance by one spouse to another during marriage is presumed a gift, the court in *Coates* nonetheless recognized that the presumption is rebuttable if the conveying spouse maintains physical and financial control of the property. In light of the facts in *Coates*, the court held that the rental property remained the husband's separate property.

In *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963, a wife who invested $50,000 of premarital assets in jointly owned land during marriage received upon dissolution an interest of $50,000 in the property. The husband argued that the wife's nonmarital funds were converted into marital property by way of gift and that the property should be divided equally. The court rejected this argument, citing section 503(a)(2) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)), which provides that "property acquired in exchange for property acquired before the marriage * * *" is not marital property. This provision in the Illinois Act does not appear in section 307 of the Uniform Marriage and Divorce Act, the counterpart to section 503, as promulgated by the Commissioners on Uniform State Laws, although, similar language may appear in the Act as adopted by other States. See Uniform Marriage

and Divorce Act §307, Commissioners' Comment (Unif. Laws Annot. 1979).

The court further concluded, based upon the wife's testimony, that she never intended to make a gift of that portion of the property acquired with her assets to her husband.

■■ ■ We believe the reasoning of *Key* is applicable here and that the property acquired with her premarriage funds should not be considered a gift to the husband even though the property on which the home was built was in Kenneth's name alone. We believe that the effect of section 503(a)(2) of the Act is to destroy the presumption heretofore existing that a transfer or conveyance of property from one spouse to another or into their joint names is presumptively a gift of the property or funds even though the property or funds were acquired before marriage.

■■ Roberta argues that the award of $43,000 was inadequate as it denies to her any appreciation in the value of the home valued by the parties at approximately $70,000 at the time of dissolution; however, Roberta's claim ignores that this sum must include the value of the land contributed by Kenneth, which we must assume is included in the total value of the house. Her argument also fails to account for the value of Kenneth's services and contributions to the construction and cost of the home. While Roberta argues that Kenneth's contribution to the construction of the home was greatly overvalued by the trial court, we cannot say that this determination was against the manifest weight of the evidence when the record as to the source of the parties' funds is not entirely clear. There was substantial commingling of assets both for home construction costs and farming operations. Furthermore, while Roberta was awarded an equal division of the proceeds of sale of farm machinery and livestock, Kenneth was required to discharge a marital debt of $7,000 which arose as a result of farming operations. We cannot say that the trial court failed to make an equitable division of property as required by section 503 of the Act. An equitable distribution is not necessarily an equal one. *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 566.

■■ Ownership of the 160 acres of farmland is also contested. Kenneth owed his mother $14,500 when the parties married in 1971. Kenneth testified that he had been paying his mother $1,000 annually on the mortgage since he bought the acreage for $15,000 in 1963. At the time of dissolution, $9,200 remained to be paid. While we note the difficulty of reconciling the $15,000 purchase price and the $14,500 debt eight years later, presumably after eight payments, the fact remains that Kenneth acquired title to the property prior to marriage. No evidence was presented concerning the source of funds used for the mortgage payments. Roberta testified that during the marriage she considered the

mortgage debt to be Kenneth's and stated that he was paying on it. On appeal, Roberta attempts to establish an interest in the farm by claiming that it was her funds that were used to reduce the mortgage debt. However, in the trial court, Roberta did not attempt to trace the mortgage payments to marital funds and instead relied on the farming chores that she and her daughter performed during the marriage to establish her claim. She testified that she castrated pigs, prepared meals for farm-hands and helped out in various ways. We have heretofore held that the performance of such services did not constitute special equities under prior law. (*Musgrave v. Musgrave* (1976), 38 Ill. App. 3d 532, 347 N.E.2d 831.) In *Musgrave*, a farm wife asserted special equities in her husband's inherited farm by virtue of her contributions of labor. We held that raising chickens, feeding stock, hauling grain and fertilizer, and keeping farm accounts were services normally performed in the marriage relation and did not establish the wife's equitable interest in the farmland. Petitioner's claim in the instant case fails in like manner. On similar facts, the courts of other States that have adopted the Uniform Act have reached a like result (see *Cain v. Cain* (Mo. App. 1976), 536 S.W.2d 866). Furthermore, increases in the value of nonmarital property are generally considered nonmarital property unless a contrary result is required by statute (see *In re Marriage of Wildin* (Colo. App. 1977), 563 P.2d 384). Section 503(a)(5) of the Illinois Act expressly provides that such increase in value is nonmarital property.

■■ The tools, machinery and livestock which the court declared marital property were undisputedly purchased during the term of the marriage. Petitioner testified that she purchased a truck and post-hole digger. Kenneth bought another truck and the remaining machinery with farm operating funds or loans. Inasmuch as the equipment was bought during the marriage and paid for by both parties, we cannot accept the argument that the items were Kenneth's nonmarital property. The fact that only Kenneth operated most of them is not dispositive; the statute is clear on its face that so long as they were acquired during the marriage and do not fall within the enumerated exceptions, they are marital property.

■■ Kenneth maintains that his ownership of livestock before marriage imbues the present herd with the character of nonmarital property, and cites *Ledbetter v. Ledbetter* (Mo. App. 1977), 547 S.W.2d 214, to support his position. *Ledbetter* held that a husband could not claim the marital home as separate property, despite the fact that he had used separate funds to purchase it, because title was held by both spouses as tenants by the entirety and there was no evidence to negate the presumption of gift. It does not support respondent's position. No evidence was introduced tracing the sale proceeds of earlier livestock to the currently held cattle.

Absent such evidence, the after-acquired cattle must be regarded in the same manner as the other marital property, according to the statutory presumption.

Kenneth supplies no authority to advance his contention that the circuit court erred in ordering him to hold Roberta harmless from notes and mortgages that she signed during the marriage. The outstanding joint obligations at the time of dissolution concerned operating expenses for Kenneth's farm. Inasmuch as Roberta was not recognized to own any interest in the farm, we find no abuse of discretion in the trial court's decision concerning the farm-related debts.

The judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.