*In re* MARRIAGE OF WILLIAM G. PRESTON, Petitioner-Appellee and Cross-Appellant, and SUZANNE M. PRESTON, Respondent-Appellant and Cross-Appellee.

Fifth District   No. 78-435

Opinion filed March 14, 1980.

KASSERMAN, J., dissenting.

Arthur L. Greenwood, of Holland, Greenwood and Morrison, of Wood River, for appellant.

Williamson & Webster, Ltd., of Alton (Lola Maddox, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

The petitioner, William Preston, was granted a judgment of dissolution of marriage from the respondent, Suzanne Preston, in the Circuit Court of Madison County. Both parties to this action appeal from the circuit court's order with respect to the disposition of property, child support, maintenance and attorney's fees. There is no issue as to the judgment of dissolution of marriage.

The parties were married in 1968 and two children were born of that marriage. The petitioner, William Preston, owns a one-third interest in Marine Power, Inc., and is the only working shareholder. He earns approximately $21,000 a year. Petitioner also receives $4500 in October of each year from the proceeds of the sale of his father's and uncle's business. The respondent is now a college student majoring in accounting and anticipates receiving her degree in two years. She is not presently employed.

The first issue concerns the trial court's disposition of the real and personal property owned by the parties. The court ordered $22,300 paid

to the petitioner upon the sale of the home of the parties, finding that these funds constituted nonmarital property.

The evidence disclosed that the petitioner had inherited $10,000 from his father in 1969 and $12,000 from his uncle in 1970. The $12,000 inheritance from petitioner's uncle initially was placed in a joint-tenancy savings account owned by the parties. It was further established that petitioner purchased a boat with $7,500 of the $10,000 inheritance and that when the boat was subsequently sold, $7,300 of the proceeds from the sale was used to purchase the lot on which a home for the parties was built. Title to the vacant lot was conveyed to the parties in joint tenancy. Petitioner contends, and the trial court found, that the down payment for the home was made up of the $12,000 inheritance from petitioner's uncle and $3,000 from the annual payment on the sale of his father's and uncle's business. The total of the $7,300 from the sale of the boat, $12,000 from the joint savings account and $3,000 of the annual escrow payment represented the sum of $22,300 which the trial court set aside to the petitioner.

The respondent contends that the trial court erred in setting aside $22,300 as inherited nonmarital funds and in finding that no gift was intended when petitioner purchased joint tenancy property with nonmarital funds or from the joint saving account established from nonmarital funds.

Section 503(a)(1) and (2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1), (2)) provides that "property acquired by gift, bequest, devise or descent" and "property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent" shall be considered as nonmarital property. Consequently, it must be determined whether it can be said that the $22,300 invested in the home of the parties was the result of an "exchange" for the property acquired by petitioner by inheritance, and, if so, whether by purchasing the property in joint tenancy, a gift to respondent was intended by petitioner.

The petitioner testified at trial that even though title to the home was taken in joint tenancy, the creation of the joint tenancy was for inheritance and tax purposes and that he did not intend to make a gift of any portion of the $22,300 to his wife. The testimony of both petitioner and respondent demonstrated that before the inherited funds were used to purchase the property they were put into a joint bank account. Further, petitioner also testified on rebuttal that the property was purchased and title was conveyed to both parties in joint tenancy as he believed that most marriages are or should be a "fifty-fifty proposition." At the time of the purchase of the property, petitioner stated that he believed their marriage was a "fifty-fifty proposition."

Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(b)) provides that when property is acquired during the marriage it is considered marital property, regardless of how title is held. Section 503(b) further provides that this presumption may be overcome by showing that the property was acquired by one of the methods enumerated in section 503(a). The petitioner argues that since the property was acquired with funds inherited by him, one of the exceptions enumerated in section 503(a), the trial court did not err in ordering a return of the funds invested by him.

The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) is a modified version of the Uniform Marriage and Divorce Act, which has been adopted by several of our sister States. Under Section 503(a)(2) of our act, if nonmarital property is exchanged after marriage for other property, the property thereby acquired also remains nonmarital property. Missouri and Colorado, which have also adopted versions of the Uniform Act, have "exchange exceptions" virtually identical to our own. (Mo. Rev. Stat. §452.330.2(2) (1978); Colo. Rev. Stat. §14—10—113(2)(b) (1974).) This provision does not appear in section 307 of the Uniform Act, which is the counterpart to our section 503, as promulgated by the Commissioners on Uniform Laws. See Uniform Marriage and Divorce Act §307, and Commissioners' Comment, in 9A Uniform Laws Annotated (1979).

Courts do not agree on the interpretation of this "exchange exception." (See Kalcheim, *Intention Controls: The Theory of Transmutation—The Effect of Placing Property Which was Initially Non-Marital into Joint Tenancy; the Theory of Commingling—The Effect of Intermingling Marital and Non-Marital Funds*, 68 Ill. Bar. J. 320 (1980).) As we understand it, the emerging rule in Missouri is that separate property which has been commingled or transferred into joint names is presumed to become marital property absent proof of contrary intent. (*In re Marriage of Badalamenti* (Mo. App. 1978), 566 S.W.2d 229; *Daniels v. Daniels* (Mo. App. 1977), 557 S.W.2d 702; *Jaeger v. Jaeger* (Mo. App. 1977), 547 S.W.2d 207; *Conrad v. Bowers* (Mo. App. 1975), 533 S.W.2d 614).) In Colorado also, when separate funds are used to purchase property held in joint names, a gift to the marital estate is presumed unless a contrary intention is manifest. *In re Marriage of Killgore* (Colo. App. 1975), 532 P.2d 386; *In re Marriage of Moncrief* (1975), 36 Colo. App. 140, 535 P.2d 1137.

■■ We reach a different conclusion in interpreting the exchange exception of the Illinois Act. We believe that assets purchased with separate funds remain separate property, regardless of the manner of holding title and regardless of the number of post-marital exchanges. We base our conclusion on sections 503(a)(2), 503(a)(5), and 503(b) of the

Act. Section 503(b) states that all property acquired after marriage is presumed to be marital property "regardless of whether title is held individually or by spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property" unless the property falls within one of the exceptions enumerated in section 503(a) which includes "property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." It should follow that if the manner of holding title is of no consequence in applying the presumption of *marital* property, then under the last sentence of section 503(b), the manner of holding title is not to be considered in determining the status of *nonmarital* property, including property acquired in exchange for nonmarital property, under section 503(a). Otherwise, the presumption of marital property under section 503(b) would engulf and render largely meaningless the exception in 503(a)(2) by limiting the exchange exception to separate property which the owner retains in its original form, a patent contradiction in terms. We think, therefore, that the legislature intended property acquired exclusively with nonmarital property to remain nonmarital property, so long as the source of funds can be traced to the initial nonmarital asset without affirmative proof of an intention to "transmute," as the cases say, the nonmarital property into marital property. This is what we meant when we said in *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 1032, 395 N.E.2d 762, 764, that the new Act destroyed the presumption of gift in these factual circumstances. (For cases antedating the new Act and applying the presumption of gift, see *Brongel v. Brongel* (1977), 48 Ill. App. 3d 27, 362 N.E.2d 750; *Fraase v. Fraase* (1975), 29 Ill. App. 3d 281, 330 N.E.2d 285; *Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 312 N.E.2d 7; and *Larocco v. Larocco* (1973), 10 Ill. App. 3d 366, 293 N.E.2d 756.) We do not mean that a gift could not have been intended nor does our decision prohibit a finding that a gift was in fact intended under proper factual circumstances.

If the contested property were grandmother's brooch that a spouse had inherited and put into a jointly owned safe deposit box, or kept in a jointly owned home, we have little doubt that upon dissolution the brooch would remain separate property regardless of the manner of safekeeping. We see no reason to regard other forms of personal property, such as boats, stocks, bank accounts, or the sale proceeds thereof, any differently so long as the parties did not intend conversion of the exchanged property.

Admittedly, there has been no uniformity in the construction of the Act. In *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, the wife deposited separate funds into a joint bank account. Upon dissolution, she sought assignment of the account in the amount of her

separate deposits as nonmarital property. The court rejected her claim, relying on decisions in Colorado and Missouri for the proposition that "failure to properly segregate nonmarital property by commingling it with marital property evinces an intent to have the former property treated as part of the marital estate." (68 Ill. App. 3d 513, 516-17, 386 N.E.2d 517, 520.) Although the court regarded the bank account as marital property, it held that the wife should be compensated for the husband's dissipation of marital funds in the account, applying the factors set out in section 503(c) to be considered in dividing marital property. It is interesting to note, in this regard, that "divide" does not mean divide, as the court is to consider, among other factors, "the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, * * *." Thus, even though the property be considered marital, the result we reach here also may be reached by applying the factors set out in section 503(c) of the Act.

In *In re Marriage of Gustke* (1979), 78 Ill. App. 3d 274, 397 N.E.2d 146, a joint back account into which the wife deposited income from her separate property was used by the parties to purchase the marital home. The wife argued that the home was therefore her separate property but the court held to the contrary, citing *Klingberg* for the proposition that "commingling marital and nonmarital property in a joint bank account resulted in [the] entire account becoming marital property; * * *." (78 Ill. App. 3d 274, 277, 397 N.E.2d 146, 147.) Again in *Gustke*, however, the wife ultimately received the amount of nonmarital property she had invested in the marital home. The court considered her investment of separate funds in the marital home as contributions to the acquisition of marital property under section 503(c)(1) of the Act.

In *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065, we noted that there was sufficient evidence to regard $5,000 of the wife's separate property, which she used as a down payment for the marital home, either as her separate property or as marital property, and accordingly, we were obliged to affirm the trial court's finding of marital property in the down payment. The wife's marital earnings, undeniably marital property, were used to make mortgage payments on the home. The trial court found that the entire value of the home was marital property, but in the division of marital property awarded the home to the wife on the basis of section 503(c)(1), in recognition of her contribution to the marital estate.

Still other decisions have adopted the construction we here place on section 503 of the Act. In *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963, a wife who invested $50,000 of premarital assets in jointly owned land during marriage received upon dissolution an interest of

$50,000 in the property. The husband argued that the wife's nonmarital funds were converted into marital property by way of gift and that the property should be divided equally. The court rejected this argument and held that where "identifiable, nonmarital assets, whether in the form of cash or tangible property, have been exchanged for jointly held property, the parties, upon dissolution of marriage are entitled to a refund of their original contribution under section 503(a)." (71 Ill. App. 3d 722, 723, 389 N.E.2d 963, 964.) The court further concluded, based on the wife's testimony, that she never intended to make a gift to her husband of that portion of the property acquired with her assets.

In *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, we affirmed the assignment of $43,000 from the sale of the marital home to the wife in recognition of her investment of $43,000 of her separate property toward the construction costs. Although there had been substantial commingling of the separate funds, we found no evidence of the wife's intention to make a gift of those funds to the marital estate.

We recognize the inevitable difficulties in proving intent retrospectively. The parties' intention to devote their separate property to their mutual welfare is rarely articulated in a functioning marriage; only after the union has faltered do the parties recognize it is an issue, as, no doubt, when individuals marry, they always think in terms of a "fifty-fifty proposition." To the extent that proof of contemporaneous intent must be regarded as a legal fiction, however, it is no stranger to the law, and arises in conveyancing and probate matters with regularity.

We regard it as a contrivance, however, to identify a spouse's separate property that has been invested in a marital home as marital property, but to return it to the original owner under the guise of recognizing it as a contribution under paragraph 503(c)(1). (*Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792; *In re Marriage of Gustke; Klingberg v. Klingberg*.) In making such awards, the court is going to unnecessary lengths. The result remains the same whether the court proceeds under section 503(c)(1) or under section 503(a)(2), as we interpret that subsection, but the Act cannot be logically applied with consistency when section 503(c)(1) may be used to undo the effect of a determination of marital property.

We affirm our position in *Dietz* that separate property remains separate, regardless of the manner of holding title and regardless of intervening exchanges, so long as there is no positive evidence of intent to make a gift. We further reject use of the term "transmutation," a word which appears in various opinions but which has no import in legal terminology (Black's Law Dictionary (rev. 4th ed. 1968)) or English usage (Fowler, Modern English Usage (2d ed. 1965); Evans v. Evans,

Dictionary of Contemporary American Usage (1957)) save as a synonym for "change" or "convert" (Webster's Third New International Dictionary 2430 (1971)).

Applying our interpretation to the case at bar, when petitioner here used his inheritance to purchase a boat, then invested sale proceeds from the boat in securities, subsequently liquidated the securities, and finally used their proceeds toward purchase of the marital home, we believe that he may assert separate ownership in a corresponding portion of the value of the house as long as there was no evidence that he intended any of the intermediate purchases to be marital property. The same reasoning applies to petitioner's second inheritance which he put into a bank account and then withdrew for further payments on the home. We note the scarcity of evidence concerning the title of the bank accounts; petitioner testified that he did not know whether the accounts were held in his name alone or jointly, and the respondent testified that they were joint accounts. We do not regard the title as dispositive, however, as we have already stated. Instead, it is the parties' intent that controls. The trial court determined, after hearing the evidence and assessing the parties' credibility, that petitioner did not intend to make a gift of his inherited funds. The court's discretion will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.

Petitioner claims that he is entitled to a proportional share of the appreciation in the value of the marital home. The parties agreed that the home appreciated $20,000 during the marriage. Petitioner claims that he is entitled to receive a portion of that increment, corresponding to the ratio between his separate investment of the inherited $22,300 and the home's initial construction cost, $60,000. According to this calculation, petitioner claims $7,433.33, before division of the remaining sale proceeds.

In Colorado an increase in the value of nonmarital property is considered marital property, on the basis of an express statutory provision. (Colo. Rev. Stat. §14—10—113(4) (1971 Supp.).) Kentucky, another State which has adopted and modified the Uniform Act, regards the increase in value of property acquired before marriage as nonmarital property "to the extent that such increase did not result from the efforts of the parties during marriage." Ky. Rev. Stat. §403.190(2)(e) (1979).

Our legislature has also spoken on this subject. Section 503(a)(5) of our Act provides that "the increase in value of property acquired before the marriage" is nonmarital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(5).) We believe that it could follow logically from other provisions in the Act that the increase in value of all nonmarital property, regardless of the time of acquisition, remains nonmarital property. However, the

legislature has spoken in specific terms only on property acquired before marriage. Missouri has adopted a similar provision. (Mo. Rev. Stat., §452.330(5) (1978).) Accordingly, we are bound to a literal interpretation of our statute. We therefore affirm the trial court's decision that the entire increase in the value of the home should be considered marital property. Our position is consistent with the decision of our sister court in *In re Marriage of Komnick* (4th Dist. 1979), 78 Ill. App. 3d 599, 379 N.E.2d 886, and we believe that deference should be accorded to decisions of other districts in this emerging area. See Mattis and Yalowitz, *Stare Decisis Among [Sic] The Appellate Court of Illinois,* 28 DePaul L. Rev. 571 (1979).

As to certain pieces of furniture which petitioner claims were purchased with separate funds, the trial court found that "the parties owned certain furniture some of which was paid for by joint earnings and some of which was allegedly paid for by petitioner's funds. The court, however, considers the evidence insufficient to consider any of such furniture as petitioner's sole property purchased by inherited funds." We cannot say that the court's decision was contrary to the manifest weight of the evidence and accordingly affirm the trial court's disposition of this personal property as marital property.

■■ The respondent contends that the maintenance in gross award of $21,000 to be paid over three years was inadequate. The petitioner contends that the award was so excessive as to be an abuse of discretion. After having reviewed the record with regard to the parties' respective financial positions, it does not appear that the trial court abused its discretion in making the maintenance award.

The respondent also contends that section 504 of the Act, when read in conjunction with section 510(a) and (b), prohibits an award of maintenance in gross. The respondent's argument is without merit. Section 504 provides that the court has the power to fashion a maintenance award "in such amounts and for such periods of time as the court deems just * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 504(b).) The court has the power to make periodic or in-gross awards. The provisions of section 510 for modifying or terminating any judgment respecting maintenance do not preclude an in-gross award. Section 510 makes the award subject to divestment or modification upon a showing of a substantial change in circumstances, taking into consideration the enumerated factors in section 504; however, such provisions do not contemplate the court being deprived of the authority to award maintenance in gross when special circumstances dictate the propriety of such an award.

■■ Both parties have appealed the order of the trial court pertaining to child support. The respondent contends that the child support award of

$150 for each child per month is inadequate for the child care expenses she will incur. The petitioner contends that the trial court erred in awarding $300 per month for 12 months of the year as he has custody for 3 months out of 12. The amount of child support is within the sound discretion of the trial court taking into consideration the factors enumerated in section 505 of the Act. The judgment of the trial court will not be set aside unless contrary to the manifest weight of the evidence. (*In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.) We cannot say that the award here was inadequate considering the income of the appellee, the maintenance and property award to the appellant, and the fact that she will receive $300 a month for 12 months of the year even though appellee will have custody for 3 months of the year.

■■ The respondent also urges that a trust fund should be established pursuant to section 503(d) of the Act in order to ensure that adequate money is available to support the children. Section 503(d) provides that a trust fund may be created in order to "protect and promote the best interests of the children." The respondent in her brief does not suggest any particular assets to be placed in trust nor does she suggest any reasons why such a trust would be necessary. This court has questioned the propriety of the establishment of a trust fund for minor children where there is financial ability and willingness to support a minor child through direct payments. (*In re Marriage of Raski*; cf. *Hogan v. Hogan* (1978), 58 Ill. App. 3d 661, 374 N.E.2d 1040.) It does not appear here that there is a demonstrated unwillingness or inability to make direct payments so as to make a trust fund necessary to secure compliance with the child-support award.

■■ The respondent further contends that the trial court erred in not ordering petitioner to include the medical and dental expenses of the children under his health insurance policy. This issue was not raised at the trial level and therefore we will not consider this issue on appeal.

The last issue on appeal is the propriety of the award of attorney's fees to the respondent. The petitioner contends that section 508 of the Act mandates that the trial court hold a separate hearing on the issue of attorney's fees.

■■ The petitioner did not request a separate hearing on the propriety of awarding fees and, therefore, his right to a separate hearing was waived. (*Rattray v. Rattray* (1976), 43 Ill. App. 3d 853, 357 N.E.2d 701.) The trial judge had before him sufficient evidence to make a determination on the relative financial ability of each party to pay his own fees and concluded on the basis of that evidence that an award of attorney fees was proper. Therefore, we conclude that the trial court did not err in ordering the payment of attorney fees.

The final issue of whether the appellant is entitled to attorney's fees

for the prosecution of this appeal must be remanded to the trial court for a determination of the propriety of such an award and the amount thereof if such an award is made. *Fox v. Fox* (1978), 56 Ill. App. 3d 446, 371 N.E.2d 1254.

For the reasons stated above, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed and remanded.

HARRISON, J.,[1] concurs.

Mr. JUSTICE KASSERMAN, dissenting:

I do not agree with the holding of the majority that under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) "assets purchased with separate funds [of one of the parties to the marriage] remain separate property, regardless of the manner of holding title and regardless of the number of post-marital exchanges."

Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act defines "marital property" as all property acquired by either spouse during the marriage, except the following, which is to be designated as "non-marital property:"

"(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

＊ ＊ ＊."

(Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1) and (2).)

Section 503(b) of the Act provides:

"(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." Ill. Rev. Stat. 1977, ch. 40, par. 503(b).

After property is determined to be marital or nonmarital, applying the provisions of sections 503(a) and 503(b) of the Act, the court must then "assign" each spouse's nonmarital property to that spouse and

---

[1] Mr. Justice Moses W. Harrison II replaced Mr. Justice George J. Moran, who retired from the bench after oral argument in this cause.

"divide" the marital property, without regard to marital misconduct, in the manner specified by section 503(c) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)).

Section 503 of the Act thus both defines and limits "marital property" and "non-marital property" and requires the court to "assign" nonmarital property and "divide" marital property after its category is determined. Therefore, the court is required to first make the determination whether the property in question is marital or nonmarital property and then make an assignment or a division of it.

In the consideration of controversies relating to the disposition of property in marriage dissolution cases, it is essential at the outset to classify the property in question as marital or nonmarital without regard to the question of its ultimate disposition. I believe that the failure to recognize this need has led to the lack of uniformity in the reported cases which have dealt with this troublesome problem. When section 503 is applied in this manner to the innumerable factual situations being presented to the courts at this time, I submit that each case may be similarly approached by the trier of fact.

It is my opinion that the lack of uniformity in the decisions in which this problem is considered is the result of the courts' haste to properly assign or divide the property in question, resulting in the initial determination (whether the property is marital or nonmarital) being utilized as the vehicle to enable the court to make what it considered to be the proper disposition of such property.

In the instant case, Mr. Preston's two inheritances were unquestionably nonmarital property. Although they were acquired after the marriage and before a judgment of dissolution of the marriage, section 503(a)(1) excepts them from the definition of "marital property." He subsequently placed the $12,000 inheritance in a joint savings account with his wife and purchased securities with the balance of the $10,000 inheritance which were registered in both their names as joint tenants. These funds, together with the $3,000 payment from the sale of his father's and uncle's business, were later used to purchase real estate, title to which was originally transferred to him and his wife in joint tenancy.

In considering the evidence introduced on trial, the majority states that it notes "the scarcity of evidence concerning the title of the bank accounts; petitioner testified that he did not know whether the accounts were held in his name alone or jointly and the respondent testified that they were joint accounts." It is impossible for me to consider such evidence as scarce evidence of the title to the bank accounts. It is certainly a novel application of the rules of evidence for any court to consider that joint title to the bank accounts had not been established.

Section 503(a)(1) and (2) of the Act provides that "property acquired

by gift, bequest, devise or descent" and "property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent" shall be considered as nonmarital property. Consequently, it must be determined whether it can be said that the $22,300 invested in the home of the parties was the result of an "exchange" for the property acquired by petitioner by inheritance; and, if so, whether by purchasing the property in joint tenancy a gift to respondent was intended by petitioner.

The petitioner testified at trial that even though title to the home was taken in joint tenancy, the creation of the joint tenancy was for inheritance and tax purposes and that he did not intend to make a gift of any portion of the $22,300 to his wife. The testimony of both parties demonstrated that before the inherited funds were used to purchase the property, they were put into either a joint savings account or used to purchase jointly held securities. Further, petitioner also testified on rebuttal that the property was purchased and title was conveyed to both parties in joint tenancy as he believed that most marriages are or should be a "fifty-fifty proposition." At the time of the purchase of the property, petitioner stated that he believed their marriage was a "fifty-fifty proposition."

The majority concludes "[i]t should follow that if the manner of holding title is of no consequence in applying the presumption of *marital* property, then under the last sentence of section 503(b), the manner of holding title is not to be considered in determining the status of *non-marital* property, including property acquired in exchange for non-marital property, under section 503(a). Otherwise, the presumption of marital property under section 503(b) would engulf and render largely meaningless the exception in 503(a)(2) by limiting the exchange exception to separate property which the owner retains in its original form, a patent contradiction in terms."

The construction placed on section 503(b) of the Act by the majority distorts its provisions. The Act does not provide that the presumption of marital property created by the section may be overcome by a showing that the property was acquired by a method listed in subsection (a) of the section, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. This was not the enactment of the legislature; and, I submit, this was not its intention. Reasonable standards of statutory construction require a construction of section 503(b) of the Act to indicate a legislative intent to create the presumption of marital property as to property acquired by either spouse during the marriage regardless of how title is held. I know of no rule of statutory construction by which it may be said that the legislature intended the presumption of marital property may be overcome by a

showing that, regardless of the manner in which title to it is held, the replacement property was acquired in exchange for property acquired by gift, bequest, devise or descent.

Section 503(b) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(b)), provides that all property acquired by either spouse during the marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. This section further provides that the presumption of marital property is overcome by a showing that such property was acquired by gift, bequest, devise or descent or that such property was acquired in exchange for property acquired by gift, bequest, devise, or descent.

Before the passage of the Illinois Marriage and Dissolution of Marriage Act, the court in *Brongel v. Brongel* (1977), 48 Ill. App. 3d 27, 362 N.E.2d 750, held that when a husband and wife hold property in joint tenancy, a rebuttable presumption arises that the spouse actually furnishing the consideration for the property has made a gift to the other spouse of an undivided one-half interest in such property. This decision thus restated the well-settled rule established in *Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 312 N.E.2d 7; *Larocco v. Larocco* (1973), 10 Ill. App. 3d 366, 293 N.E.2d 756; and *Baker v. Baker* (1952), 412 Ill. 511, 107 N.E.2d 711, and extended the application of such rule to instances in which either spouse furnished the consideration for the acquisition of joint property. It was equally well established before the passage of the act that such presumption, although it was not conclusive, can only be overcome by clear, convincing and unmistakable evidence that no gift was intended. *Lawyer v. Lawyer*; *Larocco v. Larocco*; and *Baker v. Baker*.

The majority concludes that the legislature, in adopting section 503 of the Act, intended property acquired exclusively with nonmarital property to remain nonmarital property, so long as the source of funds can be traced to the initial nonmarital assets without affirmative proof of an intention to transmute the nonmarital property into marital property. I do not agree. They cite with approval *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, in which it was held that the Illinois Marriage and Dissolution of Marriage Act destroyed the presumption previously existing that a transfer or conveyance of property from one spouse to another or to their joint names is presumptively a gift of the property or funds to the other spouse by the spouse making such transfer or conveyance.

In its attempt to justify such a conclusion, the majority analogizes the problem presented by the instant case to the situation where the contested property was "grandmother's brooch that a spouse had inherited and put into a jointly owned safe deposit box, or kept in a jointly owned home."

The majority goes on to say that it saw no reason to regard other forms of personal property, such as boats, stocks, bank accounts, or the sale proceeds thereof, any differently so long as the parties did not intend conversion of the exchanged property. This analogy obfuscates the problem presented by the instant case. At the outset it should be noted that the petitioner did not place his inherited funds into a jointly owned safe deposit box nor did he keep them in a jointly owned home. He placed them in a jointly owned bank account or used them to purchase jointly owned securities. Further, the example of "grandmother's brooch" fails to take into consideration the fact that rarely, if ever, is there written evidence of ownership of such an item of personal property, whereas bank accounts and securities do expressly indicate the individual, or individuals, who own them.

I see nothing in the Illinois Marriage and Dissolution of Marriage Act which alters the law as it existed prior to its passage with respect to joint property purchased with the funds of only one spouse.

In the instant case, the inherited funds were either placed in a joint account or used to purchase jointly owned securities and then used to acquire real estate, the title to which was originally transferred to the parties in joint tenancy. Further, the $3,000 petitioner received from the sale of his father's and uncle's business was also invested in such real estate. In my opinion, the establishment of these facts gives rise to the presumption that a gift was intended, and this presumption can be overcome only by clear, convincing and unmistakable evidence to the contrary. *Brongel v. Brongel; Lawyer v. Lawyer; Larocco v. Larocco*; and *Baker v. Baker.*

I am not unmindful of the recent decision of this court in *In re Marriage of Dietz*, in which I concurred. In *Dietz*, the wife's funds were used as the greater portion of the construction costs of a marital home on real estate owned by the husband which was acquired by him prior to the marriage. The trial court there ordered the husband to pay the wife $43,000 as her share of the marital home. In affirming the judgment of the trial court, this court held that the wife did not intend a gift of her nonmarital funds when she used them to construct the home of the parties on land owned by the husband. We further stated that the effect of section 503(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)) "is to destroy the presumption heretofore existing that a transfer or conveyance of property from one spouse to another or into their joint names is presumptively a gift of the property or funds even though the property or funds were acquired before marriage." *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 1032, 395 N.E.2d 762, 764.

*In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963, was

relied upon by this court in *Dietz* in arriving at its decision. The court in *Key* stated:

"Since the trial judge awarded special equities to the petitioner [wife], we conclude that he too found that the petitioner had established by clear and convincing evidence that she did not intend to effectuate a gift of her non-marital assets to the respondent." (*In re Marriage of Key*, 71 Ill. App. 3d 722, 724, 389 N.E.2d 963, 964.)

Thus, both *Dietz* and *Key* were decisions based on the findings of the court that the evidence in the trial court established that a gift was not intended.

The decisions in *Key* and *Dietz* appear to be equitable and just and in conformity with the ends that were sought to be attained by the Illinois Marriage and Dissolution of Marriage Act. However, neither required a determination that the Illinois Marriage and Dissolution of Marriage Act destroyed the presumption of gift existing prior to its adoption. In *Dietz*, the same results could have been obtained by classifying such property as marital property and awarding it to the party shown to be entitled to it under the provisions of section 503(c)(1) of the Act. To the extent that we held in *Dietz* that section 503(a)(2) of the Act destroyed the presumption theretofore existing that such a transfer is presumptively a gift of the property or funds, I would decline to follow the same.

Further, it is my opinion that the court in *Dietz* misapplied section 503 of the Act in holding that section 503(a)(2) of the Act was applicable. As stated above, *Dietz* involved a situation in which the wife, during the marriage, used her own nonmarital funds for the greater portion of the cost of constructing a house on real estate owned by the husband before the marriage and at the time of the construction of the house. Section 503(a)(2) of the Act defines, as nonmarital property, "property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." It cannot be said that the marital home of the parties was acquired by Mrs. Dietz "in exchange" for either property acquired before the marriage or for property acquired by gift, bequest, devise or descent. Since title to the real estate upon which the home was constructed was in her husband's name, it cannot be said that Mrs. Dietz "acquired" any interest in the marital home constructed thereon during the marriage.

The majority in the instant case stated that there are inevitable difficulties in proving intent retrospectively. They state that "[t]he parties' intention to devote their separate property to their mutual welfare is rarely articulated in a functioning marriage; only after the union has faltered do the parties recognize that it is an issue, as, no doubt, when individuals marry, they always think in terms of a 'fifty-fifty proposition.' "

They further concede that to the extent that proof of contemporaneous intent must be regarded as a legal fiction, it is no stranger to the law and arises in conveyancing and probate matters with regularity. By what I believe to be an illogical line of reasoning, the majority states that while the parties may intend to devote their separate property to their mutual welfare on a fifty-fifty basis in a "functioning marriage," when the "union has faltered" either spouse may then disregard this intent and nullify a written transfer or conveyance of property. Such an approach to this problem lacks the adhesiveness of reason. While recognizing that a spouse whose funds are used to create a joint tenancy contemplates the marriage being a "fifty-fifty proposition" at the time of the creation of the joint tenancy, the majority reaches the conclusion that such spouse should be capable of extracting from the marriage any assets he is able to manipulate at the time of its dissolution. The fault of such reasoning lies in the permissive latitude given such spouse to change his or her intention if later the "union has faltered." The majority fails to recognize that in instances in which a spouse creates a joint tenancy, the intent of such spouse at the time of its creation is controlling. I submit that at the time the petitioner created the joint tenancy, he intended to make a gift to the respondent of an undivided one-half interest in such property since it was his testimony that he considered his marriage a "fifty-fifty proposition" at the time he purchased the real estate and caused title to be registered in the name of the parties as joint tenants. It is not necessary to reach such conclusion, however, for the reason that under *Brongel v. Brongel*; *Lawyer v. Lawyer*; *Larocco v. Larocco*; and *Baker v. Baker*, the law creates a rebuttable presumption that such was his intent.

The majority, in the instant case, further states that under an interpretation of section 503 of the Act such as suggested by this dissent, the presumption of marital property under section 503(b) would engulf and render largely meaningless the exception in 503(a)(2) "by limiting the exchange exception to separate property which the owner retains in its original form, a patent contradiction in terms." This reasoning fails to take into consideration that a spouse may retain property he had acquired by gift, bequest, devise or descent as nonmarital property. He or she is not required to retain such property in its original form, but may convert it into any other form so long as he or she does not indicate an intent to transfer any ownership thereof to the other spouse. For example, if such property was real estate, it may be converted to cash and then transferred in form to a checking or savings account or to securities so long as they are registered in his own name or in some manner that does not indicate a desire to make a gift to some other person. It is only when such spouse transfers such property and indicates that the replacement property is to be owned by the spouses in some form of co-ownership such as joint

tenancy, tenancy in common, tenancy by the entirety, or community property (referred to in section 503(b) of the Act) that he evinces a donative intent. Such transfers historically have been held by the courts to create a presumption that such spouse intended a gift of such property, or some portion thereof, to his spouse.

As indicated by the record, the petitioner did not present evidence of the kind necessary to sufficiently rebut the presumption of gift. To the contrary, the petitioner's testimony is indicative of the fact that a gift was intended.

Therefore, it is my opinion that the trial court erred in setting aside $22,300 as petitioner's separate nonmarital property; and it would be my decision that the marital home was the joint property of both petitioner and respondent to be divided as marital property.

If it were found that the marital home is the marital property of both petitioner and respondent, it would be unnecessary to address the question of whether petitioner is entitled to any accretion in the value of the investment of his inherited funds in the property.

The petitioner also contends that certain items of personal property should be considered as nonmarital property as they were purchased from funds in the joint checking account and those funds included money received from his annual escrow payment. It is my opinion that this contention is without merit. In *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, the court, after a consideration of other jurisdictions' decisions analyzing similar property disposition provisions, held failure to properly segregate nonmarital and marital funds indicates an intent to have the nonmarital funds treated as marital property. Here, there was insufficient evidence in the record to establish that the furniture was treated as nonmarital property, which resulted in its properly being considered by the trial court as marital property. Moreover, as the court in *Klingberg* pointed out, to allow the return of funds or property which had changed in form would result in "the adoption of tracing of nonmarital property into marital property [citations] * * * [and] would in many instances result in complicated financial determinations and potential marital discord * * *." *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 517, 386 N.E.2d 517, 521. *Cf. Turley v. Turley* (Ky. 1978), 562 S.W.2d 665.

For the reasons stated above, I would reverse that portion of the judgment of the trial court ordering the payment of $22,300 to the petitioner out of the proceeds of the sale of the home of the parties.