*In re* MARRIAGE OF VIRGINIA ULUHOGIAN, Petitioner-Appellee, and VAHRAM ULUHOGIAN, Respondent-Appellant.

Fifth District   No. 78-508

Opinion filed July 23, 1980.

Thomas A. LeChien, of LeChien, Aguirre & Creason, Ltd., of Belleville, for appellant.

David L. Sauer, of Lackey & Lackey, of Centralia, for appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Virginia Uluhogian, was granted a judgment of dissolution of marriage from respondent, Vahram Uluhogian, in the Circuit Court of Clinton County. Respondent appeals from the circuit court's subsequent orders of October 31, 1978, with respect to the disposition of property and child custody.

On appeal, respondent contends: (1) that the trial court erred in its award of certain jewelry; (2) that the trial court erred in considering respondent's pension plan as marital property; and (3) that the trial court erred in awarding custody of the youngest child to petitioner.

Petitioner and respondent were married September 6, 1960, and three children were born of the marriage. At the time of trial the children, Charles, Stephanie, and Suzette, were 16, 15, and 10 respectively. Respondent is a physician who was employed by the State of Illinois until his discharge in February of 1978. Petitioner is employed as a sales clerk at J. C. Penney earning a salary of $3.65 an hour.

Respondent initially contends that the court erred in designating a

gold cross as petitioner's nonmarital property and certain other jewelry as marital property.

The evidence disclosed that the jewelry in question consisted of a gold bracelet, earrings, a hand carved brooch and certain jewelry charms of a total appraised value of $3100. Petitioner testified that this jewelry, with the exception of the gold bracelet, was brought to the United States from Italy by respondent in 1965. She testified that the gold bracelet was given to her by respondent's uncle, Archbishop Stephan Uluhogian, on the occasion of the birth of their first child, Charles. Petitioner further testified that the gold cross was given to her by respondent shortly after they were married. While petitioner takes no appeal from the trial court's ruling, in opposition to respondent's appeal, she contends that the balance of such jewelry was also given to her by respondent.

Respondent testified that all the jewelry, with the exception of the gold cross, was purchased by him in Italy around 1965. He stated that the purchase was made by him with funds acquired by him and deposited in the Italio-American Bank in Venice, Italy, prior to his marriage to petitioner. He specifically denied making a gift of any of the jewelry to petitioner and contended that the gold cross was given to him by his uncle, the archbishop, prior to the marriage. He further testified that although he permitted his wife to wear the cross, he did not make a gift of it to her. He also testified that he purchased the jewelry as an investment and for security purposes.

In the trial court's findings of fact the court stated with respect to the jewelry:

"The jewelry as appraised and photographed is marital property. While it is true that the husband mentions these items in the interrogatories as a gift, he also qualifies that and says he bought it because of her want of security, the desire for investment and appreciation in value. The jewelry appears to have been purchased with money he still had in Italy. The nature of the jewelry, along with a ring purchased, bears this out. If there was a gift intended, the court finds from the evidence that it was not an exclusive gift to her as non-marital property, but as a purchase of valuable items from pre-marriage funds in Italy as an investment for the marriage assets. She claims the bracelet as a gift from the archbishop, but with contrary evidence it seems to be quid pro quo for the $2000.00 given to the archbishop and of the same genre as the other jewelry brought back at the same time. The court makes these findings from the evidence as a whole also, that is, considering his general transactions."

We conclude from this portion of the trial court's order that it

determined that the jewelry, including the bracelet, was marital property and none of it the separate nonmarital property of respondent.

The trial court in its division of the marital property awarded petitioner the jewelry as a portion of her share of the marital property. The court also set off to her the gold cross as her separate nonmarital property, indicating that it was a gift to her from the respondent.

Respondent contends that by virtue of section 503(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)), the jewelry must be considered as his separate nonmarital property, since it was property acquired in exchange for property acquired before the marriage.

The trial court expressly found that respondent purchased the jewelry with nonmarital funds and that he intended no gift of the jewelry to petitioner. Based on this court's recent decisions in *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, and *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332, we conclude that the jewelry in dispute is the separate nonmarital property of respondent. This court in *Preston* stated:

> "We think, therefore, that the legislature intended property acquired exclusively with nonmarital property to remain nonmarital property, so long as the source of funds can be traced to the initial nonmarital asset without affirmative proof of an intention to 'transmute,' as the cases say, the nonmarital property into marital property." (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 676, 402 N.E.2d 332, 336.)

This court further stated in *Preston*:

> "We affirm our position in *Dietz* that separate property remains separate, regardless of the manner of holding title and regardless of intervening exchanges, so long as there is no positive evidence of intent to make a gift." *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 678, 402 N.E.2d 332, 337-38.

■■ It is apparent from the testimony at trial that the funds used to purchase the jewelry were the nonmarital funds of respondent since they were property acquired by him before the marriage (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(6)). The jewelry therefore became the nonmarital property of respondent because it was property acquired in exchange for property acquired before the marriage (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)). The trial court found that there was no evidence sufficient to establish that respondent intended to make a gift of the jewelry to his wife; therefore, it remained his nonmarital property.

The court stated, in its findings, that "[i]f there was a gift intended, the court finds from the evidence that it was not an exclusive gift to her

[petitioner] as non-marital property, but as a purchase of valuable items from pre-marriage funds in Italy as an investment for the marriage assets." Thus, the court concluded that respondent's gift was to the fund of marital assets. We hold that there was no positive evidence of an intention to make such a gift; therefore, such conclusion on the part of the trial court was erroneous under *Dietz* and *Preston.* We conclude, therefore, that the trial court erred in awarding the jewelry in question to petitioner as a portion of the marital property. In our judgment such jewelry is the separate nonmarital property of respondent. We further conclude that this cause must be remanded to enable the trial court to adjust its division of the marital property consistent with this opinion.

Respondent further questions on appeal the propriety of the trial court awarding the gold cross to petitioner as her separate nonmarital property. The court indicated that it found the cross to have been a gift from respondent to petitioner.

Petitioner testified that respondent gave her the cross shortly after they were married, while respondent testified that he gave petitioner the cross to wear but specifically denied any intention of making a gift. The cross originally belonged to respondent. The evidence established that it was given to him by his uncle many years prior to the marriage; therefore, it originally was nonmarital property under section 503(a)(6) of the Act. Nonmarital property remains nonmarital, as previously discussed, absent affirmative proof of an intention to make a gift as required by *Dietz* and *Preston.* We therefore conclude that the trial court erred in awarding the gold cross to petitioner as her separate nonmarital property and find that the gold cross should be considered as respondent's separate nonmarital property.

Respondent secondly contends that his pension plan is nonmarital property and that the trial court erred in awarding the petitioner an additional $10,000 from the sale of the marital home to offset the award of the pension plan to respondent.

Respondent was employed by the State of Illinois as a physician from 1957 to 1978 and during his employment made contributions of approximately $25,000 to the State Employees Retirement System of Illinois. Under such retirement system respondent was entitled to withdraw his contributions to the retirement fund if his employment with the State terminated. Further, after he completed eight years of service with the State, respondent was qualified to receive a retirement annuity upon reaching age 55 and a death benefit or a widow and survivors annuity would be payable.

Respondent contends that since section 14—147 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 14—147) specifies that benefits payable under this article are not subject to execution,

garnishment or attachment, the court is prohibited from dividing such benefits as marital property.

The applicability of section 503 of the Illinois Marriage and Dissolution of Marriage Act to pension plans has been considered. The court in *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 658-59, 397 N.E.2d 511, 516, held:

> "We hold that an employee spouse's contractual right to a pension or profit-sharing interest is 'property' under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), regardless of whether the interest is matured, vested or nonvested, or contributory or noncontributory. Any part of such pension or profit-sharing interest earned by the employee spouse while married is property 'acquired' during marriage within the meaning of section 503 and is, therefore, marital property."

The court in *Hunt* was considering a private pension fund established by Chicago Tribune, Inc.; however, we conclude that section 14—147 of the Illinois Pension Code does not prohibit consideration of respondent's public pension fund as marital property. The trial court awarded respondent the pension fund as his separate property and, to equalize that award, granted petitioner an additional $10,000 from the proceeds of the sale of the parties' marital home. Respondent's rights in the pension fund were not altered by the trial court's determination that respondent's interest in the fund was marital property. This additional award to petitioner was a permissible method of achieving a division of the marital assets.

Although this issue has apparently not been considered by the Illinois courts, the Colorado Court of Appeals held in *In re Marriage of Pope* (1975), 37 Colo. App. 237, 544 P.2d 639, that the husband's contributions to the Colorado Public Employees Retirement Association were marital property. The PERA plan also provided that such funds were not subject to execution, levy, attachment, garnishment, or other legal process. In *Pope* the husband argued that the fund was exempt from being considered in the division of marital property. The court in *Pope* stated:

> "This statutory provision is inapplicable to the present situation. Here, the account itself is not affected, nor are the husband's individual rights in the fund altered. Under the facts before us, the trial court did not divide the accumulations between the parties, but merely considered the amount in determining the amount of other marital property to be retained by each, and no rights to this fund became vested in the wife in any manner. We find this treatment of this asset by the trial court to be neither analogous to an assignment, [citation.], nor to a garnishment. [Citation.]

\* \* \* [T]he husband's interest in the PERA account is in no way impaired by the decree of the trial court ordering payment of certain sums in order to equalize the amount of property to be accorded to each party." *In re Marriage of Pope* (1975), 37 Colo. App. 237, 239, 544 P.2d 639, 640.

■ Respondent's pension fund was acquired almost entirely with money earned during the marriage. The parties were married in 1960, and respondent commenced his employment with the State in 1957. The trial court properly determined that the pension plan was marital property and considered the value of the contributions made during the marriage in making its division of the marital property.

Finally, respondent contends that the court erred in awarding custody of the parties' 10-year-old daughter, Suzette, to petitioner.

In separate interviews with the trial judge, both Stephanie and Suzette expressed a preference to live with their father. Stephanie testified that she and her mother had a personality conflict and did not get along well. She stated that she had a better relationship with her father. Respondent also testified to the conflict existing between Stephanie and her mother.

Both petitioner and respondent expressed a desire to have the custody of both girls, and both stated that they believed the children should not be separated. Each contended that he was competent to care for the children. However, respondent testified that he did not cook, clean, or wash dishes and. did not believe he should have to do these chores.

■■ Usually, a custody order that separates children is not considered in their best interests, but it occasionally can be. (*In re Marriage of Dow* (1978), 64 Ill. App. 3d 177, 380 N.E.2d 1174.) Here, it was apparent that Stephanie had a better relationship with her father than with her mother and it was in her best interest to be with respondent. However, with respect to Suzette, respondent's testimony casts some doubt on his ability to adequately care for her, and the trial court considered it in Suzette's best interest to remain with her mother. Under circumstances such as those presented here, we cannot say that the decision of the trial court was against the manifest weight of the evidence.

Appellee has filed a petition in this court requesting that respondent be ordered to pay her reasonable attorney's fees incurred in defending this appeal. In a petition which is not verified, petitioner alleges that she is indigent; however, the award of a portion of the marital assets to her by the trial court refutes this claim. Therefore, appellee's petition for attorney's fees is denied.

For the foregoing reasons, we reverse the orders of the trial court awarding the jewelry in question to petitioner as a portion of her share of

the marital estate and awarding the gold cross to the petitioner as her separate nonmarital property. We affirm the remaining portions of the trial court's orders. Since the jewelry in question was awarded to the petitioner by the trial court as a portion of her share of the marital estate, we remand this cause to the trial court for the purpose of adjusting the award to each of the parties of a portion of the marital property so that allowance may be made for petitioner's failure to receive the jewelry in question.

Reversed and remanded in part; affirmed in part.

JONES, P. J., and KARNS, J., concur.