In re MARRIAGE OF JULIA R. CIHAK, Deceased, and ROY N. CIHAK, Respondent-Appellant.—(MARY ANN CIHAK, Adm'r of the Estate of Julia R. Cihak, Petitioner-Appellee.)

Fourth District    No. 16374

Opinion filed January 23, 1981.

John C. Baxter, of Burger, Fombelle, Wheeler & Dvorak, P. C., of Decatur, for appellant.

Barber, Hall, Segatto & Hoffee, of Springfield (Barry O. Hines, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case involves the classification and distribution of property by the trial court following the dissolution of the marriage of Julia and Roy Cihak.

On April 21, 1978, Julia Cihak, petitioner, filed a petition for dissolution of marriage from Roy Cihak, respondent, in the circuit court of Sangamon County. A judgment of dissolution of marriage was entered on July 25, 1978. Subsequent to the entry of judgment the court held hearings with regard to the disposition of the property. Before the court entered a supplemental judgment order as to the division of the property, Julia was murdered by Roy who pleaded guilty to the murder and was sentenced to a term of 30 years' imprisonment. Mary Ann Cihak, administrator of Julia's estate, was substituted for her.

The court entered a supplemental judgment order on February 29, 1980, awarding to petitioner's estate all marital property and awarding each party their nonmarital property. Respondent appeals the award of all marital property to petitioner's estate and the classification of oil-producing property located in Effingham as nonmarital property belonging to petitioner.

Although it was apparent from the record that respondent had murdered petitioner, we do not need to consider that as a factor to be considered in dividing the property under section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)), as the record does not show that it was considered by the trial judge when he entered the order. Respondent does not contend that the judge impermissively considered the murder when dividing the property.

Where section 503(c) of the Act states, "It also shall divide the marital property without regard to marital misconduct," the misconduct referred to is that which occurred in the course of the marriage leading to its dissolution. However, the fact that respondent murdered petitioner should not operate to take anything away from him.

■■ In *Bradley v. Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699, one joint tenant of real estate had murdered the other joint tenant. The court reasoned that the murder destroyed the unities of the joint tenancy. It held that the murderer thus lost his right of survivorship in the victim's interest. It stated that his property was not being forfeited thereby because he was not the sole owner of the property before the murder. The court also concluded that the murderer was entitled to retain the one-half interest in the property which he previously held because to take that from him would cause his murder conviction to operate as an attainder. Likewise, in the present case, the respondent should not be permitted to enhance his interest in marital property by virtue of the murder but it should not cause him to forfeit that which he already had.

■■ Regardless of whether the murder was a factor which could be considered, the award of all of the marital property to petitioner's estate was not an abuse of discretion by the trial court. Discretion is abused only where no reasonable man would take the view of the trial court. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The marital assets consisted of the family home in which the parties had $52,641 of equity, a lot in Arkansas valued at between $5,000 and $6,000, two automobiles, household furnishings valued at $1,940, and a savings account containing less than $100. The evidence presented at the hearing showed that for the last four to five years of the marriage respondent contributed almost nothing in the way of financial support to the family unit while petitioner worked full time and supported the family. There was also testimony that respondent had dissipated a portion of the marital assets

by removing the kitchen cabinets. Even though petitioner's estate had more nonmarital property than respondent, the division of the marital property can be considered to have been divided into just proportions when the relative contributions of the parties, the dissipation of marital assets by respondent, and the relatively small need of respondent for this property while he is in prison are considered. Distribution of marital assets similar to this one have been approved in other cases. (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065; *In re Marriage of Woodward* (1980), 83 Ill. App. 3d 253, 404 N.E.2d 575.) An equal distribution of marital property is not mandated by the Act. *In re Marriage of Aschwanden* (1979), 82 Ill. 2d 31, 411 N.E.2d 238.

Respondent's contention that the oil-producing property in Effingham was marital property is without merit. This property had been given to petitioner by her mother. Under section 503(a)(1) of the Act, property acquired by one spouse as a gift is nonmarital. Respondent claims, however, that even though it was initially a gift to petitioner, it was subsequently transmuted into marital property because the oil income from the property was used by both parties and marital funds were used to pay the real estate taxes in 1977 and 1978. However, uncontradicted testimony showed that petitioner's mother paid the real estate taxes in 1977.

■■■ Separate property remains separate so long as there is no positive evidence of an intent to make a gift. (*In re Marriage of Uluhogian* (1980), 86 Ill. App. 3d 654, 408 N.E.2d 107.) Here, there is no evidence of any intent on the part of petitioner to make a gift of any part of this property to respondent. While a portion of the royalties from the oil-producing property might represent a return of capital as the oil wells were being depleted, we see no logic in construing the use of these sums as marital assets to imply an intent to make a gift of the asset which produced the royalties. As the royalties for the year 1978 were being used for marital purposes, we likewise see no reason why the payment of taxes for that year from marital funds would indicate any intent to make a gift of the producing properties. Neither the marital use of the royalties nor the payment of taxes transmuted the Effingham property to marital property.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

CRAVEN and MILLS, JJ., concur.