*In re* MARRIAGE OF NICK ANGIULI, Petitioner-Appellee, and LAILA ANGIULI, Respondent (Marshall J. Auerbach, Appellant).

Second District   No. 84—0154

Opinion filed June 28, 1985.

Abigail K. Spreyer, of Jerome H. Torshen, Ltd., of Chicago, for appellant.

Thomas J. Stepanich, of Waukegan, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Marshall J. Auerbach, an attorney, appeals from a judgment awarding additional attorney fees, costs and expenses of $5,057.95 to him against Nick Angiuli, who was his client in a dissolution of marriage proceeding against Laila Angiuli. The trial court determined that total fees of $36,000 were appropriate in this case and, noting Auerbach had already been paid $31,500 by his client, entered judgment for the $4,500 remaining due, together with costs and expenses.

The attorney contends the award was inadequate and he was entitled to a total of $62,202.25 for fees and $567.49 for costs and expenses incurred. He argues the trial court abused its discretion in determining the fees and that the award was contrary to the evidence. Auerbach also asserts that the initial payment of $31,500 by Angiuli for fees was by their agreement for his work to that point which the trial court improperly revalued in determining total fees earned.

The client argues that the trial court properly awarded a reasonable sum for attorney fees and costs and that the initial payment to Auerbach towards his fees neither estopped Angiuli from later challenging them as excessive nor prevented the trial court from evaluating the initial fees and services together with all services rendered in the case by Auerbach to determine what was a reasonable fee.

Auerbach represented Angiuli in the dissolution action from June 20, 1981, to October 1982. The judgment of dissolution of the marriage was entered on July 30, 1982; Laila Angiuli appealed and the judgment was affirmed by this court in an order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). (*In re Marriage of Angiuli* (1983), 120 Ill. App. 3d 1165.) Other counsel represented Angiuli in that appeal, in which the issues related to the division of the approximate $1.2 million marital estate accumulated by the parties over their 22-year marriage. It was comprised principally of parcels of improved and unimproved real estate; Smith, Barney and Merrill & Lynch investment accounts; and an incorporated general contracting business of which Nick Angiuli was the sole shareholder and sole beneficiary of a corporate pension plan. The evidence in that case disclosed Angiuli's salary from 1977 through 1980 averaged $167,625 per year. In affirming that judgment this court considered that the trial court had correctly apportioned the marital property approximately 45% to Laila and 55% to Nick, denied maintenance to Laila and directed each party to pay their own attorney fees.

Attorney Auerbach, whose offices are in Chicago, was retained by Nick Angiuli on June 20, 1981, to represent him in the dissolution proceeding to be brought against Laila Angiuli in Lake County. No written fee agreement was entered by them, and their testimony differed at the hearing of this matter as to the terms of employment. Auerbach testified that he told his client the fee would be at the rate of $150 per hour for both court and noncourt work; that he advised his client that associates of Auerbach would also work on the case, but at lower hourly rates; that the client expressed surprise at the fees, but agreed to them and paid a $3,500 retainer at this initial meeting.

Mr. Angiuli, however, testified the attorney did not advise him of the rates to be charged for his fees and, when the client asked what the fee would be, the attorney did not respond and changed the subject. The client stated he learned the hourly rate to be charged only when he received a final accounting of services performed. Also, while he was introduced to certain associates of the attorney, the client stated he was never told they would be working on the case.

Before trial and after representing Angiuli from June 1981 to April 1982, Auerbach billed Angiuli for his services. Although that invoice was not offered in evidence below, Auerbach testified it contained a detailed listing of various services totaling $33,897.49. These services included the pleadings in the dissolution action; numerous conferences with the client and with opposing counsel; discovery procedures; and, drafting five settlement agreements, which the wife refused to sign. Auerbach's petition for those fees reflect 12 pages of entries for work done from June 1981 to April 1982 on this case.

Angiuli testified he spoke with Auerbach after receiving that bill, telling him it was "crazy," but paid $28,000 after Angiuli was advised by the attorney he should do so as it would come out of marital assets. The client also testified that because the trial was coming up in a few days, he paid so as to not anger the attorney. Angiuli testified, too, that the bill did not state the hourly rate charged for the services. As he felt his case was not going anywhere, Angiuli also retained attorney Kathryn Marshall to advise him, as she was a matrimonial lawyer familiar with Lake County practice.

Auerbach's petition for fees also discloses that from April 1982 through the time of entry of the judgment for dissolution, Auerbach and certain of his associates performed further services in preparation for trial, including pretrial motions, depositions and a settlement conference. The fee petition entries for this period comprise 8½ pages also showing client conferences; conferences with opposing counsel and witnesses; legal research and the drafting of trial memoranda. The record discloses the trial took seven days and related solely to property issues; grounds for dissolution were not contested and had been proved up earlier. The trial court also required counsel to submit written memoranda of facts and law in lieu of oral argument at the close of trial.

Subsequently, Auerbach billed Angiuli for the services performed from April 1982 through the completion of the case in the trial court. Angiuli filed a petition requesting the trial court to adjudicate the question of attorney fees, as he considered the demands to be excessive and unfair. Auerbach thereupon filed his petition in which he sought additional fees of $31,269.74, the sum due after crediting Angiuli with payment of $31,500 against the total fees claimed of $62,202.25. The petition sought fees for 384.5 hours expended on the case at $150 per hour by attorney Auerbach; 4.25 hours expended at $50 per hour by an associate; 25.75 hours at $65 per hour for another associate; and, 69.5 hours at $38 per hour expended by a paralegal. In addition, recovery of costs of $567.49 was sought.

At the hearing of the petitions the parties stipulated that Auerbach would testify that the number of hours claimed in his petition was accurate. Auerbach testified that certain issues presented by the case were novel or unusually difficult, thus requiring the extensive research applied to the case. He found unusual the question of how to value his client's corporate pension plan, as the client owned the corporation and on termination of the plan all funds would revert to him; Auerbach was unable to find any cases dealing with that situation. He also found extensive research was necessary when the wife requested a Mercedes automobile, the title of which was held by the client's corporation, to determine whether the corporate veil could be pierced even though the corporation was not a party to the cause. Auerbach expended considerable research to find case law which would support a request the wife receive 34% of the marital assets and be required to pay her own attorney fees if she received a substantial property award. Auerbach also testified his client's temperament made the case difficult and he had numerous telephone calls from him and at least 33 separate conferences.

Victor Newmark, a licensed attorney for more than 50 years who has concentrated on matrimonial law for 30 years, testified as an expert witness for Auerbach. He stated Auerbach, and all other attorneys in the case, were highly regarded in the domestic relations field. Newmark also testified that a reasonable hourly rate for an attorney of Auerbach's stature and experience in Chicago would be $150 to $200 per hour and the rates charged by Auerbach were reasonable, as were the rates charged by Auerbach's various associates, including the senior law student who performed 69.5 hours of research as a paralegal. The witness reviewed Auerbach's fee petition, the memorandum prepared in lieu of closing argument, the trial court's opinion, the judgment of dissolution and concluded the reasonable value of Auerbach's services exceeded $60,000.

The trial court sustained objections to inquiries directed to Newmark as to the difficulty of the case and the quality of Auerbach's representation, as the witness had not heard the evidence and the court was in a better position to determine those issues.

William Rosing, a Waukegan attorney who concentrated on matrimonial law, was called as an expert witness by Angiuli and testified that Lake County lawyers generally charged $100 per hour for office time and $125 for court time in domestic relations matters. He first testified he found no unusual or novel issues in the case, subsequently qualifying his statement by agreeing the question regarding the car owned by the corporation was unique. Rosing stated the amount of

research done on the case was excessive, although agreeing some research to apprise the judge of current law was helpful.

The trial court issued a letter opinion in which he stated:

"I have considered the evidence, the arguments of counsel and the relevant factors including the nature of the controversy, the questions in issue, the importance of the issues to matrimonial law, the degree of responsibility, the standing and skill of Mr. Auerbach, as well as the time and labor involved and will enter a judgment in Mr. Auerbach's favor in the amount of $4,500 and $557.95 in cost.

The judgment is based on my determination that total fees in the amount of $36,000 are appropriate and that $31,500 have been paid.

This judgment is not intended to depreciate the efforts of able and learned counsel, but rather to reflect an award that is fair to all concerned."

Judgment for Auerbach was so entered, and he appeals.

■ We consider first Auerbach's contention the trial court improperly considered the $3,500 retainer and $28,000 in fees initially paid by the client for services rendered to April 1982. Auerbach argues those payments for the first phase of his work were liquidated and the court should have only considered the fees claimed for the trial phase of this matter. He concludes the $4,500 award was inadequate for that phase and an abuse of discretion.

We agree with Angiuli's argument that his initial payments, at most, constituted evidence of an account stated and the trial court properly considered the reasonableness of all fees paid or claimed because of the special relationship of attorney and client. An account stated is an "agreement between parties who have had previous transactions that the account representing these transactions is true, so that the balance is correct, together with a promise which may be express or by implication for payment of this balance." (*Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 1040, 351 N.E.2d 264, *appeal denied* (1976), 64 Ill. 2d 598.) Assent to an account stated may be shown by payment or part payment of the balance. (See *Pynchon v. Day* (1886), 118 Ill. 9, 7 N.E. 65; *W.A. Parkinson Co. v. Tullgren* (1913), 177 Ill. App. 295.) However, where the business relationship is of attorney and client, and the attorney sues for his fee, a statement of account is not conclusive upon the client, who is always permitted to prove that the charges are excessive or otherwise unreasonable and unwarranted. *Laff v. Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, 306, 379

N.E.2d 773; *Hopkinson v. Jones* (1888), 28 Ill. App. 409, 425; *Gruby v. Smith* (1883), 13 Ill. App. 43, 45-47.

■ We conclude the trial court in a dissolution of marriage proceeding may properly evaluate the reasonableness of all fees sought by an attorney in that proceeding notwithstanding the client may have advanced a retainer or paid earlier billings. To hold otherwise would work an unauthorized diminution of the court's power to determine the reasonableness of claimed fees under section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508; see *In re Teichner* (1984), 104 Ill. 2d 150, 161, 470 N.E.2d 972.) The cases relied upon by Auerbach do not support his claim under Illinois law. See, *e.g., Rippey v. Wilson* (1937), 280 Mich. 233, 273 N.W. 552.

■ We consider next whether the amount of the fee award was an abuse of discretion as urged by Auerbach. Section 508 of the Illinois Marriage and Dissolution of Marriage Act provides, in part, that:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:
>
> (1) The maintenance or defense of any proceedings under this Act." (Ill. Rev. Stat. 1983, ch. 40, par. 508.)

An award of attorney fees is left to the court's sound discretion and will be reversed only for an abuse of that discretion. Factors to be considered by the court in determining what are reasonable fees are the attorney skill and standing, the nature of the controversy, the novelty and difficulty of the questions at issue, the importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community and the benefits to the client. (*In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 41, 429 N.E.2d 594.) In applying these factors the court may rely on its own knowledge and experience in determining the value of legal services. (*In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 219, 437 N.E.2d 761, *appeal denied* (1982), 91 Ill. 2d 567.) It must be apparent that the fees sought were necessarily incurred and more must be shown to justify a fee request than a mere compilation of hours and an hourly rate. *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 41, 429 N.E.2d 594.

Auerbach contends the award was inadequate because the trial

court failed to consider the customary fees charged by experienced Chicago divorce lawyers, the benefits to the client, counsel's skill and standing, the novel and difficult issues of the case, the amount and importance of the subject matter, the attorney's degree of responsibility in the case and his expenditure of time. We note, however, that in its letter opinion the trial court did indicate it had considered these factors, except it did not explicitly mention usual and customary fees or benefits to the client in making the award.

Where an attorney and client have an express contract for compensation it will control the issue in the absence of unconscionability or other contractual impropriety. (*People v. Kinion* (1983), 97 Ill. 2d 322, 332, 454 N.E.2d 625.) It is apparent here that the trial court did not consider that the attorney had proved the existence of an oral contract between the parties that Auerbach was to be paid $150 per hour for all time spent on the case. The evidence was conflicting on that factual issue, and we will not substitute our judgment for that of the trial court. (See *Serritella v. Plotkin* (1980), 89 Ill. App. 3d 739, 412 N.E.2d 7; *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3.) If these parties had settled in writing at the time he was retained the basis for the fees the attorney would charge his client, it is likely some of the present controversy between them could have been avoided; unfortunately, they did not do so.

Auerbach contends he was entitled to be compensated at the usual and customary rates for Chicago counsel and looks to attorney Newmark's testimony that would be $150 to $200 per hour in this kind of case. Auerbach notes the fees actually awarded here were at an average rate of about $75 per hour for the hours claimed, demonstrating the trial court gave no consideration to this factor. He asserts that Chicago attorneys who are engaged in Chicago to perform services in other counties or States are entitled to recover fees in accordance with the usual, customary and established fees of Chicago lawyers, citing *Elliott v. Brown* (1953), 349 Ill. App. 428, 111 N.E.2d 169, and *Alexander v. Stern* (1929), 252 Ill. App. 286, in support of that proposition. In making this argument, Auerbach does not suggest what the standard should be to determine fees of downstate attorneys for work they may do in a Chicago court.

In any event, we do not agree with the thesis advanced by Auerbach in this matter. In *Crane v. Village of Roselle* (1910), 157 Ill. App. 595, this court considered fees claimed by attorneys from Chicago who rendered services for their client in Du Page County. It noted:

> "The inquiry should be what is usually and customarily

charged and paid for like services in the court where said services are rendered ***." (157 Ill. App. 595, 598.) See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

The trial court also had evidence before it that the usual fees for such services in Lake County were $100 per hour for office work and $125 for trial. We find nothing in the record to suggest the trial judge did not apply those standards, together with the other factors to be considered in such matters, to the time and labor the court considered it was necessary for Auerbach and his associates to apply to this case. See *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.

■ Auerbach also contends the trial court did not consider the benefits resulting to his client from his services. He argues Angiuli was originally willing to give his wife 60% of the marital assets, by way of settlement, but that the efforts of the attorney saved the client over $200,000, as Angiuli received over one-half of the assets.

It is apparent from the comments of the trial judge that he considered the division of property to have been made in "just proportions," as is required by the Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)), and thus the expected and required result was obtained. Little weight can be given to the circumstances that Angiuli was willing to give his wife more than required of him in order to settle the matter, and that the court required him to pay less after trial does not necessarily establish that was as a result of his counsel's efforts or special skills.

■ Auerbach next contends the trial court failed to adequately consider the nature of the controversy or novelty and difficulty of the questions presented. We have, however, considered the record of this case, and the order of this court in the first appeal, and do not find the issues to be novel or unusually difficult. The questions researched to great length regarding valuation of a pension and piercing the corporate veil (of a nonparty) are not as momentous as is suggested. Nor do we consider that the memorandum of law and facts prepared by counsel and submitted in lieu of oral argument addressed any novel issue. That 29-page document, representing some 125¼ hours of time in its preparation at a claimed cost of $9,018.50, was unremarkable, although thoroughly done.

■ We also reject Auerbach's further argument that the favorable financial status of his client and his ability to pay $150 per hour is significant to this appeal. No client of an attorney may properly be required to pay more than the reasonable value of the legal services

rendered simply because he has the ability to do so. *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 604, 400 N.E.2d 56; see *In re Teichner* (1984), 104 Ill. 2d 150, 161, 470 N.E.2d 972.

Finally, Auerbach contends the trial court failed to adequately consider the time and labor necessarily expended by him and his associates, as shown in his 20-page petition for fees. Angiuli responds that much of the work reflected in the petition was unnecessary, noting time slips for over 7 hours for the uncontested prove-up of grounds; 17.5 hours applied in a single day in working on a brief; 19.5 hours at a cost of $2,925 for a support matter, much of which was for going to court and waiting for an available judge; and $1,987.50 for the taking of depositions of Mr. and Mrs. Angiuli.

It appears to us that the trial court did accurately and adequately consider the time necessarily applied by Auerbach and his associates on his client's behalf in awarding fees. As the $36,000 fee awarded appears on the record of this case to be reasonable for the services rendered, the trial court did not abuse its discretion, and its judgment will be affirmed.

Affirmed.

HOPF and SCHNAKE, JJ., concur.