In re MARRIAGE OF JOAN C. AUD, Plaintiff-Appellant, and FRED L. AUD, Defendant-Appellee.

Fifth District   No. 5—83—0835

Opinion filed April 8, 1986.

Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellant.

D. Kent Trone, of Edwardsville, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Joan C. Aud, has perfected this appeal from a judgment

of dissolution of marriage entered in the circuit court of Madison County. This appeal raises the question of the propriety of the disposition of property under the dissolution decree. The following facts were adduced at trial:

On January 1, 1972, the parties were married in Las Vegas, Nevada. At the time of the marriage, the defendant, Fred Aud, was a dentist who operated a dental office in Collinsville, Illinois; the plaintiff was a receptionist and switchboard operator for a company in Sunset Hills, Missouri. Immediately after the parties were married, plaintiff terminated her employment, a decision in which defendant acquiesced. During the 11-year marriage, plaintiff worked sporadically at the dental office and part-time at a floral shop. No children were born of this marriage.

The record establishes that the parties acquired a substantial amount of real and personal property during the marriage. The real property included unimproved real estate in Florida, Jamaica, and White County, Illinois, and a house at Big Bear Estates, Lake of the Ozarks, Missouri. Plaintiff was awarded the real estate in Florida and Jamaica; defendant was awarded the White County property because this had been conveyed to him by his mother and, consequently, constituted nonmarital property. The house and lot at Big Bear Estates was ordered sold, with the net proceeds to be divided evenly between the parties. The defendant was ordered to pay all mortgage payments, taxes, and expenses on this property until sold and was to receive credit for one-half of these expenditures upon sale.

The personal property included home furnishings, personal effects, automobiles, appliances, a Criscraft boat, AT&T stocks, several checking and savings accounts, insurance policies, a dental practice in Collinsville established in 1957, a professional dental corporation doing business in Missouri, which was established in 1981, and two "inventions" which the defendant used in his dental practice. With the exception of the home furnishings at Big Bear Estates (which were ordered to be sold with the real estate), the home furnishings, personal effects, automobiles, and appliances were divided in accordance with the parties' agreement. The Criscraft boat was found to be marital property and was awarded to the defendant because it had been pledged as security for a loan. The AT&T stocks, which were held jointly by defendant and his mother, were found to be nonmarital property and were awarded to defendant. All of the checking and savings accounts standing in defendant's name alone were awarded to defendant because they were mostly business related and those that were not were of minimal value. Plaintiff was awarded any existing

bank accounts in her name. The insurance policies were awarded to the named insured, with complete freedom to change beneficiaries. The dental practice in Collinsville, which was established prior to the marriage, was found to be the nonmarital property of defendant. The professional dental corporation in Missouri, which was established during the marriage, was found to be marital property. The dental practice in Collinsville was valued at $68,000; the professional dental corporation in Missouri was valued at $131,000. The "inventions" were found to be of no value to anyone except defendant because the cost of developing a patentable prototype would be in excess of $25,000 without any guarantee of profit.

At trial, the plaintiff contended that defendant dissipated her share of the marital property by (1) ignoring his dental practice in Collinsville, (2) paying exorbitant salaries to his employees and (3) spending thousands of dollars to care for his mother. The court found that although the defendant's dental practice in Collinsville had diminished near the end of the marriage, this was caused by depressed economic conditions and by defendant's concentration on the development of the professional dental corporation. Since the professional dental corporation was a marital asset and the Collinsville practice was a nonmarital asset, the court reasoned that defendant had not dissipated the marital property by ignoring his Collinsville dental practice as alleged by plaintiff. Moreover, the court held that the amounts of money defendant paid to his two employees was not a blatant diversion of funds so as to constitute dissipation of marital assets.

As to the thousands of dollars the defendant gave to his mother, the trial court found that although the defendant had no legal obligation to support his mother, he did have a moral obligation to do so. Thus, the court concluded that defendant's support of his mother was a necessary expense and "a liability under 503(c)(7) to be considered in the disposition of property and possible maintenance." The evidence establishes that plaintiff acquiesced in these payments during the marriage.

Plaintiff received a total of $42,250 in marital assets. Defendant received $170,550 in marital assets and, since he was the only party capable of paying them, $140,154.89 in marital debts. The court ordered defendant to pay the cost of tuition, fees, and materials for plaintiff to attend two years at Belleville Area College so that plaintiff could become gainfully employed. Defendant was also ordered to pay $25,000 cash as a property settlement to plaintiff within two years and to pay maintenance of $1,200 per month until October

1986, when the award would be subject to modification in accordance with *In re Marriage of Asch* (1980), 100 Ill. App. 3d 293, 298-99, 426 N.E.2d 1066, 1069-70.

Plaintiff appeals from the judgment of the circuit court, asserting that: (1) the valuation and allocation of the marital and nonmarital assets and debts was biased in favor of defendant, (2) the Collinsville dental practice should have been found to be marital property, and (3) the defendant's "spendthrift" behavior resulted in a dissipation of assets which should have been considered when the assets were distributed.

■ Prior to oral argument in this case, defendant moved to strike certain portions of plaintiff's brief on the ground that they refer to matters outside the record. This motion, in part, objects to the first two sentences on page 26 of plaintiff's brief, in which plaintiff makes reference to materials prepared by the Bureau of Census. This objection is unfounded due to the fact that we may take judicial notice of census materials. See *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085, 1090; *United States v. United Brotherhood of Carpenters & Joiners of America, Local 169* (7th Cir. 1972), 457 F.2d 210, 214-16.

■ Defendant's motion to strike further makes reference to the proposition that current laws and regulations do not fully address sexual discrimination against women in the labor force. Since this is not an authoritatively settled matter of common knowledge, we may not take judicial notice of this proposition. (See *Motion Picture Appeal Board v. S. K. Films* (1978), 65 Ill. App. 3d 217, 226, 382 N.E.2d 103, 110.) Consequently, defendant's objection in this regard is well taken, and such portion of page 26 of plaintiff's brief is ordered stricken.

■ Defendant further moves that this court strike those allegations appearing on page 26 of plaintiff's brief in which she makes reference to the proposition that one who returns to the work force late in life will probably have very little retirement income and, consequently, will probably be required to rely on public assistance. Since entitlement to public assistance involves a multitude of considerations other than the current income of applicants for assistance, we may not take such judicial notice requested by plaintiff.

■ Defendant also moves to strike that portion of page 26 of plaintiff's brief in which reference is made to a statistical survey compiled by Linda Schroeber of the New York Law School. We find the citation to this alleged survey to be too imprecise for this court to take judicial notice of its contents. (See *Murdy v. Edgar* (1984), 103

Ill. 2d 384, 394, 469 N.E.2d 1085, 1090.) Consequently, that portion of plaintiff's brief is ordered stricken.

■■ Defendant next moves to strike a portion of page 14 of plaintiff's brief in which reference is made to unsuccessful attempts on plaintiff's part to obtain the use of certain marital real estate. Since there is no citation to the record for this proposition, and since this proposition apparently refers to matters occurring after trial, we will not take judicial notice of this proposition. (See 87 Ill. 2d R. 341(e)(7); *Nordine v. Illinois Power Co.* (1964), 48 Ill. App. 2d 424, 439, 199 N.E.2d 34, 42.) Consequently, the two sentences on page 14 of plaintiff's brief referring to such matters are ordered stricken.

■■ Finally, defendant moves to strike a paragraph at the top of page 27 of plaintiff's brief which makes reference to a survey performed by sociologist Lenore Weitzman of Stanford. We find the citation to this alleged survey too imprecise for this court to take judicial notice of its contents. (See *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085, 1090.) Consequently, such paragraph on page 27 of plaintiff's brief is ordered stricken.

■■ A circuit court's resolution of property division is fettered only by the range of reason, and its judgment will not be disturbed absent an abuse of discretion. In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.) Although plaintiff has alleged actual prejudice of the circuit court judge who presided, she acknowledges that no record was made of the hearing on the motion in which she alleges actual prejudice. We therefore conclude that any contention of prejudice on the part of the trial court has been waived by plaintiff. (See *In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 86, 462 N.E.2d 692, 695.) Consequently, all assertions of error made by plaintiff on appeal hinge upon whether the trial court properly applied recognized principles of law in distributing the parties' property.

■■ Although there is no requirement that the court place a specific value on each item of property, there must be competent evidence of value to support the court's division of property. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 208, 445 N.E.2d 811, 815.) Plaintiff alleges that the defendant's "inventions" are worth more than "nil" and that she should be entitled to one-third of any

future profits which may result from the marketing of these inventions. Plaintiff states that this is so because expenses of development of these inventions were paid out of marital funds. The evidence established that the defendant's "inventions" could not be patented without prototypes, and even if a patent were secured, there was no guarantee that the inventions would be profitable. Defendant testified that the development of prototypes would cost him approximately $25,000. Although plaintiff testified that defendant allegedly turned down a $100,000 offer for these inventions, there is sufficient evidence in the record to support the trial court's finding as to the value of these "inventions."

■ Plaintiff also alleges that it was unfair for the trial court to allocate the undeveloped parcels of real estate in Florida and Jamaica to her at the value she placed upon them. Specifically, plaintiff alleges that her valuation was based upon defendant's "puffed" valuation and that defendant is more financially able to develop or sell the real estate in question. We note that plaintiff put a somewhat higher monetary value on each parcel of land ($10,000) than did defendant ($5,000). The trial court was at liberty to accept the valuation of the property to be as plaintiff had represented it to the court. It would be a travesty to justice to permit a party to place an inflated value on property simply because such party anticipated it would be awarded to the other spouse in a dissolution decree. Plaintiff represented to the court that each parcel of such real estate had a fair cash market value of $10,000. It is impermissible for her to now contend that each parcel was worth $10,000 to defendant but not to her.

■ Plaintiff further urges that the trial court erred in awarding defendant credit for one-half of the expenses he is required to advance to maintain the Big Bear Estates. Specifically, plaintiff alleges that these expenses had already been considered as a limit on the amount of disposable income available for maintenance. Plaintiff therefore requests that defendant be given no credit for these expenses from the proceeds of the sale.

The Illinois Marriage and Dissolution of Marriage Act provides in pertinent part:

> "[The court] shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> * * *
>
> (9) whether the apportionment is in lieu of or in addition to maintenance." (Ill. Rev. Stat. 1983, ch. 40, par. 503(d).)
> and

"Maintenance. (a) In a proceeding for dissolution of marriage or legal separation or declaration of invalidity of marriage, *** the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home ***." (Ill. Rev. Stat. 1983, ch. 40, par. 504(a).)

It is clear from the above-quoted sections that the legislature intended " 'to encourage the court[s] to provide for the financial needs of the spouses by property distribution rather than by an award of maintenance.' [Citations.]" (See Ill. Ann. Stat. ch. 40, par. 503, Historical and Practice Notes, at 467 (Smith-Hurd 1980).) In the instant case, the Big Bear Estates property was ordered to be sold so that plaintiff's financial needs could be met by property distribution rather than maintenance. The record indicates that such property had an appraised value of $94,500 and that a $50,000 mortgage existed against the property. Assuming that the property is sold for the appraised value, the parties will divide $44,500 plus the amount of mortgage principal paid by defendant during the time prior to the sale. Nevertheless, prior to the sale, the interest and principal on the mortgage, the expense of maintaining the property, and expenses of selling the property are defendant's sole responsibility. Since these expenses are necessary to the realization of the property settlement, it is not unreasonable to require both parties to share in these expenses. Furthermore, the debt owed on Big Bear Estates may well have been considered as a liability when the court determined defendant's ability to pay maintenance. Since the statute prefers property distribution to maintenance awards in providing for the needs of parties to a divorce, we find that the trial court's allocation of the net proceeds of this property after the payment of current expenses and expenses of sale is not unreasonable. This is particularly true when consideration is given to the fact that such expenses were to be paid in full by defendant; however, one-half of such expenses was to inure to the benefit of plaintiff because it was ordered that defendant would receive a return of only one-half of his expenditures in this regard when such property was sold.

The plaintiff next contends on appeal that the Collinsville dental practice, although established prior to the marriage, became

marital property through transmutation by virtue of her contribution as a homemaker and defendant's contributions of marital income to the practice. Since both parties acknowledge that section 503 of the Illinois Marriage and Dissolution of Marriage Act, as amended by Public Act 83—129 (Ill. Rev. Stat. 1983, ch. 40, par. 503, as amended by Pub. Act 83—129, effective August 19, 1983), has no effect upon the instant case, we will apply the law as it existed prior to the amendment.

       In this regard, section 503 of the Illinois Marriage and Dissolution of Marriage Act provides in pertinent part:

> "Disposition of property. (a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property';
>
> (1) property acquired by gift, legacy or descent;
>
>        \* \* \*
>
> (6) property acquired before the marriage;' \*\*\*
>
> (d) [The court] shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit;
>
>        \* \* \*"

(Ill. Rev. Stat. 1983, ch. 40, pars. 503(a), (d).) Under the statute, a spouse's contribution as a homemaker is not to be considered by the court as a factor in determining whether property is marital or nonmarital in nature. Rather, a spouse's contribution as a homemaker is a factor to be considered when marital property is distributed. Thus, the plaintiff's contributions as a homemaker are irrelevant to the determination as to whether the Collinsville dental practice was transmuted from nonmarital to marital property.

     Plaintiff's contention regarding transmutation is based upon three cases: *In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030, *In re Marriage of Smith* (1981) , 86 Ill. 2d 518, 427 N.E.2d 1239, and *In re Marriage of Brown* (1982), 110 Ill. App. 3d 782, 443 N.E.2d 11. However, the state of the law as to transmutation recently has been summarized by our supreme court in *In re Marriage of Olson* (1983), 96 Ill. 2d 432, 451 N.E.2d 825, in which the court stated:

> "the principle of transmutation is based on the presumption

that the owner of the nonmarital property intended to make a gift of the property to the marital estate. [Citation.] In *Smith* we stated:

'Just as the affirmative act of transferring title will support a presumption of gift, so, too, will the affirmative act of augmenting nonmarital property by commingling it with marital property.' *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 532, 427 N.E.2d 1239.

Every act of commingling or every use of marital funds for the maintenance of nonmarital property, however, should not work a transmutation. Such a strict reading of our holding in *Smith* would practically render the concept of nonmarital property illusory. The commingling of marital and nonmarital assets, and the contribution of marital assets to nonmarital property must be sufficiently significant to raise a presumption of a gift of the property to the marital estate. Thus, the making of or paying for repairs and maintenance on the house that do not materially add to its value or payments that do not reduce the indebtedness of the mortgage should not raise the presumption of transmutation. [Citation.] This reasoning seems to be the basis of the appellate court's ruling [in favor of defendant]. [Plaintiff] simply had not made adequate proof of a significant contribution.

We need not decide whether [plaintiff] proves sufficient contributions to raise the presumption of transmutation because we find that even if such a presumption were raised, [defendant] successfully rebutted any presumption that a gift of the house to the marital estate was intended." (*In re Marriage of Olson* (1983), 96 Ill. 2d 432, 439-40, 451 N.E.2d 825, 828-29.)

Thus, transmutation occurs only in cases in which the contribution of marital assets to the nonmarital property is significant. A contribution is not significant if it merely maintains the nonmarital asset. The burden of proving a significant contribution is on the moving party, and even if a significant contribution were to be established, the presumption of transmutation created by the contribution may be rebutted with evidence that a gift of the nonmarital property was not intended.

■ The record in the case at bar establishes that the Collinsville dental practice became less profitable during the marriage because of a reduction in the volume of business. This loss of business was found to be due in part to economic conditions and in part to defendant's establishment of a separate professional dental corporation which the

trial court found to be marital property. Although marital funds were spent on the Collinsville dental practice, there was no showing that these funds did any more than maintain the continued operation of this practice. Thus, plaintiff did not establish that marital funds significantly contributed to the Collinsville dental practice. Accordingly, we reject plaintiff's assertion that the Collinsville dental practice is marital property.

Plaintiff's final argument is that the trial court ignored defendant's dissipation of marital assets when it distributed the marital property and determined the amount and duration of maintenance. Specifically, plaintiff alleges that defendant dissipated marital assets by: (1) spending almost $70,000 in marital funds for the care of defendant's mother; and (2) paying exorbitant salaries to his employees.

Dissipation of marital assets occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage while the marriage is in the process of breaking down. *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 317, 453 N.E.2d 866, 869.

■■■ The evidence adduced at trial established (1) that defendant's mother is a widow and defendant is her only living descendant, (2) that the defendant spent approximately the same amount of money for his mother's care for years prior to the marital breakdown, and (3) that plaintiff did not object to these expenditures while they were being made. Although defendant is not legally obligated to support his mother (See *In re Estate of Chrzan* (1976), 41 Ill. App. 3d 270, 271, 353 N.E.2d 438, 440), the trial court did not err in finding that under the facts presented in the instant appeal, the marital estate was not improperly dissipated by these support expenditures. This is particularly true when it established that plaintiff acquiesced in such payments.

■■■ Regarding plaintiff's assertion that defendant dissipated marital assets by paying excessive salaries to the employees of his dental office, the record establishes that Karen Hammond began working for defendant's Collinsville dental practice as a secretary-receptionist in December 1979. After receiving a $30 per week pay raise in December 1982, Ms. Hammond's net weekly salary was $147.11. After the divorce decree was entered but before the property settlement, Ms. Hammond accepted a position with defendant's professional dental corporation at a salary of $6.25 per hour based upon a 40-hour work week. In addition, she was given the use of a car leased by the corporation to travel between the Collinsville dental

practice and the corporation's office in Missouri. Ms. Hammond's salary from the corporation and the use of the leased car were in addition to the salary she was paid by the Collinsville dental practice.

After the professional dental corporation was formed in December 1982, defendant employed Darrell Enos, a personal friend and a marketing professor at Maryville College, as marketing director for the corporation. As marketing director, Mr. Enos was to solicit business for the corporation. The compensation for his work was $800 per month plus expenses. At the time of trial, no clients had been obtained by Mr. Enos.

An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959.) The record in the instant case is devoid of any proof that the compensation paid to Ms. Hammond or Mr. Enos was inconsistent with the compensation generally paid to individuals with similar skills who perform similar jobs. Without such proof, we conclude that the trial court correctly found that the compensation paid to these individuals was reasonable.

We therefore reject plaintiff's assertion that the trial court erred in failing to take into account defendant's dissipation of assets when it divided the marital assets and established the amount and duration of the maintenance awarded to plaintiff.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

JONES and KARNS, JJ., concur.