*In re* MARRIAGE OF NANCY SIDDENS, Petitioner-Appellant, and W.C. SIDDENS, Respondent-Appellee.

Fifth District   No. 5—89—0311

Opinion filed February 5, 1992.—Rehearing denied March 27, 1992.

GOLDENHERSH, P.J., concurring in part and dissenting in part.

John R. Sprague, Sr., of Sprague & Sprague, of Belleville, for appellant.

Vaughn & Vaughn, of Olney, and Roscoe D. Cunningham, Ltd., of Lawrenceville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Nancy Siddens, wife, appeals from the judgment of the circuit court of Lawrence County pertaining to the distribution of the parties' property, denial of maintenance, and award of attorney fees.

Nancy and W.C. Siddens were married in the summer of 1981. Both parties had been married before, and W.C. was some 12 years Nancy's senior. The marriage lasted six years.

Prior to and during the marriage, W.C. was involved in several businesses, primarily oil production, construction, automotive parts, farming and rental properties. All income from the various businesses was put into several different accounts, all of which were in the names of the respective businesses or W.C. Siddens alone. W.C. then transferred money from the business accounts to a personal account for family expenses. At the beginning of the marriage, W.C. transferred $900 a week into this family account which was then placed under Nancy's control. By the time the parties separated in 1987, the amount per week had been reduced to $400. Part of the reason for the reduction stemmed from the fact that W.C.'s net worth had been declining for some years as a result of a failing economy in the Lawrenceville area. Nancy claimed, however, that W.C.'s net worth as of January 1, 1987, was $8,626,600. The evidence revealed, on the other hand, that W.C. had over $4,403,774 in debts as of December 31, 1987, and a negative net worth of $421,811. In fact, W.C.'s businesses had been losing money every year since 1982 prompting W.C. to transfer money repeatedly between his various accounts to cover expenses.

Prior to her marriage to W.C., Nancy was employed as a registered nurse. She stopped working, however, once the parties married. Nancy used the family-account money which W.C. had turned over to her to buy food for the parties, decorate their living quarters, cover her traveling expenses, support her relatives, and make her own personal investments and savings. When Nancy left the marriage, she took over $40,000 in cash and some 28 gold and silver coins. Instead of returning to the nursing profession, Nancy chose to live off these monies plus $200 a week in court-ordered temporary maintenance. Nancy has since become licensed to sell real estate but had not started working at the time of the last hearing. Nancy claims monthly expenses of $5,424. She also claims she is entitled to 50% of W.C.'s property, which she values at some $2,313,965, taking into account his numerous debts. The trial court did not agree and instead awarded Nancy $10,886, representing her nonmarital monies brought into the marriage, numerous items of furniture and personal property, a Chrysler LeBaron automobile, one-half of a parcel of real estate known as the Texaco property, $54,470 as Nancy's interest in the improvements made upon the marital and business premises during the marriage, and $27,817 in attorney fees. Further maintenance was denied. Nancy appeals raising some 26 issues, the majority pertaining to specific items of property awarded to W.C. as his nonmarital property. Again, Nancy believes she is entitled to 50% of everything W.C. owns.

She also requests permanent maintenance and all of her attorney fees.

■ We need not address every contention Nancy raises on appeal. Suffice it to say the record contains five large boxes of exhibits and extensive testimony and argument. The evidence overwhelmingly revealed that the majority of W.C.'s property was acquired prior to the parties' marriage and was maintained separately throughout the marriage, thereby remaining W.D.'s separate property. (See Ill. Rev. Stat. 1989, ch. 40, par. 503.) It is true some items were exchanged for other property during the course of the marriage, but these "new acquisitions" were also separately maintained and separately titled. Assets purchased with separate funds remain separate property regardless of the number or type of postmarital exchanges as long as there has been no evidence of an intent to transmute. (See *In re Marriage of Thacker* (1989), 185 Ill. App. 3d 465, 467-69, 541 N.E.2d 784, 786-87; *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 675-76, 402 N.E.2d 332, 335-36.) For example, the mere fact that W.C.'s primary business enterprise, Maeco, was incorporated into a subchapter S corporation during the marriage did not automatically transfer it into marital property. (See *Thacker*, 185 Ill. App. 3d at 468, 541 N.E.2d at 786.) Likewise, W.C.'s rental business did not become marital property simply because new properties were added and older ones were maintained when all of the funds came from W.C.'s separate accounts. Mere marital use of the rental income certainly did not transmute the properties themselves into marital assets. (See *In re Marriage of Cihak* (1981), 92 Ill. App. 3d 1123, 1126, 416 N.E.2d 701, 703.) Transmutation occurs only where the contribution of marital assets to nonmarital property is significant. (*In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 330, 491 N.E.2d 894, 901.) For instance, the trial court properly awarded Nancy a share in the $100,000 plus improvements made to the parties' residence during the marriage. In contrast, no reimbursement was required for improvements made to W.C.'s rental properties when the evidence was insufficient to establish increased value. And mere maintenance of an asset during a marriage, standing alone, does not constitute a significant contribution requiring reimbursement to the marital estate. (See *Aud*, 142 Ill. App. 3d at 330, 491 N.E.2d at 901; see also *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 573, 440 N.E.2d 1028, 1030.) Consequently, as all of W.C.'s business interests were held separately and controlled by him with little if any input from Nancy or the marital estate, we find no error in the trial court finding such interests to be the nonmarital property of W.C. to do with as he saw and sees fit. As a result, we

find no evidence of any dissipation of assets. We further note the trial court is not required to place a specific value on each item of property as long as there is sufficient evidence of value in the record to support the court's apportionment. See *In re Marriage of Leff* (1986), 148 Ill. App. 3d 792, 803, 499 N.E.2d 1042, 1050; *Aud*, 142 Ill. App. 3d at 326, 491 N.E.2d at 898; *In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 89, 458 N.E.2d 1360, 1362; see also *In re Marriage of Pancner* (1982), 111 Ill. App. 3d 546, 550, 444 N.E.2d 653, 656.

■ Turning to Nancy's other contentions, we first reiterate that the touchstone of apportionment of marital property is whether the distribution is equitable. (See *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 222, 543 N.E.2d 119, 130.) Equitable, however, does not necessarily mean equal. (*In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 673, 545 N.E.2d 459, 465; see also *In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 790, 560 N.E.2d 374, 378.) In fact, in some instances the court may be justified in awarding one spouse a larger share of marital property based upon that spouse having made a greater contribution to the marital assets, especially when the marriage was of short duration. (See *Jones*, 187 Ill. App. 3d at 225, 543 N.E.2d at 132; see also *Cecil*, 202 Ill. App. 3d at 790-91, 560 N.E.2d at 378-79.) As we have stated countless times before, a trial court's resolution of property division is fettered only by the range of reason. (*E.g., Aud*, 142 Ill. App. 3d at 326, 491 N.E.2d at 898.) And we, sitting as a reviewing court, will not disturb the judgment unless an abuse of the court's discretion is shown. (*E.g., Jones*, 187 Ill. App. 3d at 222, 543 N.E.2d at 130.) The question is not whether we agree with the trial court but rather whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all circumstances, exceeded the bounds of reason so that no reasonable person would take the view adopted by the trial court. (*Jones*, 187 Ill. App. 3d at 222, 543 N.E.2d at 130; *Aud*, 142 Ill. App. 3d at 326, 491 N.E.2d at 898; see also *In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 75, 476 N.E.2d 1109, 1112.) We find no abuse of the trial court's discretion with respect to the apportionment of the parties' properties including the horses in this instance, especially in light of the short duration of the marriage, the age of the parties and the fact that the parties' assets were produced by W.C.'s business interests established long before the marriage. (*Pancner*, 111 Ill. App. 3d at 550, 444 N.E.2d at 656.) We do find fault, however, with the classification of one item, that being the Jones farm. In 1971, W.C. purchased some 670 acres of unimproved timber and farm ground with the Joneses. In 1983, the Joneses and W.C. divided the land with

W.C. receiving approximately 330 acres. At the time of the division, W.C. was in poor health. He therefore decided to add Nancy's name as a joint tenant to the new deed in order to provide for her in case something should happen to him. By adding Nancy's name to the deed, W.C. is presumed to have made a gift to the marital estate. (See, *e.g.*, *In re Marriage of Nicks* (1988), 177 Ill. App. 3d 76, 79, 531 N.E.2d 1069, 1071.) Based upon the record before us, we do not believe W.C. sufficiently rebutted that presumption, and the trial court erred in classifying the farm otherwise. We therefore must reverse this portion of the trial court's judgment and remand this cause for the purposes of giving Nancy a share in the Jones property.

■ Besides the property distribution issues, Nancy also contends the trial court erred in allowing her only $200 a week as temporary maintenance and further erred in terminating all maintenance as of March 1989. She claims she has monthly expenses and needs totaling some $5,425 which she cannot meet on her own. Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)) provides that a court may grant maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; that the spouse is unable to support herself through appropriate employment; or that the spouse is otherwise without sufficient income. (See, *e.g.*, *Harding*, 189 Ill. App. 3d at 679, 545 N.E.2d at 469.) Maintenance is to be awarded in such amounts and for such periods of time as the court deems just, after consideration of all the various factors, including: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the age and physical and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1989, ch. 40, par. 504(a).) The propriety and amount of any award of maintenance are matters within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion by that court. (See, *e.g.*, *Harding*, 189 Ill. App. 3d at 680, 545 N.E.2d at 469; *Nicks*, 177 Ill. App. 3d at 80, 531 N.E.2d at 1072.) The denial of Nancy's request for maintenance was not an abuse of discretion in this instance. As the trial court noted in its order, Nancy worked as a registered nurse prior to the parties' marriage and could easily become relicensed if she should so desire. In addition, Nancy has become a licensed real estate salesperson since the parties' separation. With two professions

available to choose from, Nancy obviously is employable and quite capable of providing for her own needs. More importantly, under section 504 of the Illinois Marriage and Dissolution of Marriage Act, Nancy has an affirmative obligation to seek appropriate employment and not just sit idly by and demand compensation from a former spouse. (See *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 328, 453 N.E.2d 748, 754.) Nancy has few, if any, health problems and is not of an age where she cannot be expected to pay for her own way. This is not, however, all that Nancy has. In addition to the $40,000 in cash and the 28 gold and silver coins she took with her when she left the marriage, plus some $200-a-week temporary maintenance, Nancy was also awarded over $65,000 in cash from W.C. plus an interest in one farm. And, upon remand she will be given an additional interest in the Jones farm, a property which she values at some $170,000. We also take into consideration the declining state of W.C.'s financial well-being which necessarily hinders W.C.'s ability to pay Nancy the maintenance she requests. We further find it curious that Nancy claims she is entitled to some $5,400 a month in maintenance based upon in part the parties' lifestyle during the marriage when the most W.C. ever gave her during the marriage as her "allowance" was $3,600 a month. And, this money was supposed to be used to support W.C., Nancy and two of her children. Moreover, toward the end of the marriage this allowance had been reduced to just $400 a week. While Nancy may have enjoyed a rather lavish lifestyle at the beginning of the marriage, given the short duration of the marriage and Nancy's employability, we cannot say the trial court erred in denying Nancy permanent maintenance under such circumstances.

■ Nancy also finds fault with the trial court's denial of the total amount she requested for attorney fees and costs. The trial court awarded some $27,817 in fees while Nancy claimed amounts totaling some $40,393. Again, we find no error in this award. An award of attorney fees is within the sound discretion of the trial court and absent an abuse of that discretion will not be overturned on review. (See *Jones*, 187 Ill. App. 3d at 230, 543 N.E.2d at 135; *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 423, 480 N.E.2d 513, 518.) The factors to be considered in determining what are reasonable fees are the attorney's skill and standing, the nature of the controversy, the novelty and difficulty of the questions at issue, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community and the benefits to the client. (*Angiuli*, 134 Ill. App. 3d at 423, 480 N.E.2d at 518; *Green v. Green* (1976), 41 Ill. App. 3d 154, 169, 354 N.E.2d 661,

674.) In applying these factors the trial court quite properly may rely on its own knowledge and experience in determining the value of the legal services rendered. (*Angiuli*, 134 Ill. App. 3d at 423, 480 N.E.2d at 518; *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 263, 361 N.E.2d 787, 790.) Moreover, assuming that the payment of attorney fees rests primarily with the party for whom the services were rendered, the spouse seeking attorney fees must show she is financially unable to pay the fees while the other spouse is able to do so. (*Jones*, 187 Ill. App. 3d at 230, 543 N.E.2d at 135-36; *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 684, 509 N.E.2d 707, 716; *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 276, 411 N.E.2d 947, 949.) It is also true that the financial ability of the spouse required to pay may limit the amount awarded regardless of the expenditure of time and labor by the attorney. By the same token, financial ability to pay does not warrant an award beyond what is fair and reasonable. *Angiuli*, 134 Ill. App. 3d at 425-26, 480 N.E.2d at 520; *McNeeley*, 117 Ill. App. 3d at 329-30, 453 N.E.2d at 755; *Green*, 41 Ill. App. 3d at 170, 354 N.E.2d at 675.

Here the trial court found that Nancy did not have sufficient funds with which to pay her attorney fees whereas W.C. had access to such monies. The court accordingly ordered W.C. to pay the fees for Nancy based on the reasonable hours incurred at the prevailing rate in the area for the type of work performed. (See *Angiuli*, 134 Ill. App. 3d at 424-25, 480 N.E.2d at 519.) One part of the charged fees for which the trial court did not allow reimbursement, however, was the travel time incurred by one of Nancy's attorneys who lived across the State. The trial court believed it could not justify such an award on the grounds that the nonlocal attorney performed no legal services which were not already available in the area. The award of attorney fees is to be limited to those fees *necessarily* incurred. (See Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) In this instance, both attorneys Nancy chose to hire to represent her throughout the proceedings had considerable legal experience. She simply did not establish that the required expertise could not have been performed by local counsel. We therefore agree with the trial court that W.C. should not be obligated to pay for unnecessary expenses simply because Nancy felt some unexplained need to have additional counsel from outside the area. (See *Richheimer v. Richheimer* (1965), 59 Ill. App. 2d 354, 366-67, 208 N.E.2d 346, 353 (husband not obligated to subsidize wife's zest for accumulation of legal talent).) We therefore find no abuse of the trial court's discretion with respect to the award of attorney fees under such circumstances.

For the foregoing reasons, we affirm the judgment of the circuit court of Lawrence County in all respects except for the finding pertaining to the Jones farm. As the trial court improperly classified this property as W.C.'s nonmarital property, we remand this cause for reclassification of the real estate as marital property in order to give Nancy an interest in the farm.

Affirmed in part; reversed and remanded in part.

CHAPMAN, J., concurs.

PRESIDING JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I respectfully dissent from that part of the majority's opinion which affirms the trial court's denial of the amount Nancy requested for attorney fees and costs.

I consider the trial court's ruling to be an abuse of discretion. Attorney McGaughey has considerable skill and expertise, and Nancy's employment of attorney Sprague as well was quite reasonable. He is a lawyer with unquestioned expertise in dissolution litigation and more than 50 years of experience. As noted above, this case involved several businesses primarily dealing with oil production, construction, auto parts, farming and rental properties. The financial aspects of the case included multiple accounts and transfers of funds to meet expenses in increasingly hard times. The trial produced five boxes of exhibits and many hours of testimony for the trial court to consider. This court received appellant's brief with 126 pages of argument and appellee's brief with 45 pages. In a dissolution action of this size and complexity, the employment of counsel with Sprague's expertise in domestic matters was quite prudent, and the travel time of that counsel and fees of both counsel were necessarily incurred. See Ill. Rev. Stat. 1989, ch. 40, par. 508(a).