*In re* MARRIAGE OF BARBARA J. GAUMER, Petitioner-Appellee, and WILLIAM R. GAUMER, Respondent-Appellant.

Fifth District    No. 5—01—0583

Opinion filed January 29, 2003.

WELCH, J., dissenting.

Curtis L. Blood, of Collinsville, for appellant.

Stephanie Robbins, of Edwardsville, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The respondent, William R. Gaumer, appeals from a final judgment of the trial court in the dissolution of his marriage to the petitioner, Barbara J. Gaumer. The only issue is whether the trial court abused its discretion in the distribution of the parties' property. We affirm.

## FACTS

William and Barbara were married on September 8, 1962, and their marriage was dissolved after 38 years, when Barbara was 66 years old and William 69 years old. The judgment distributing the parties' property, which is the order from which William appeals, was entered on February 26, 2001. At that time, both of the parties' children were emancipated adults.

During the marriage, Barbara was a homemaker and did not work outside the home, with the exception of the years from 1962 until 1966. William worked at Granite City Steel as a salaried employee until his retirement in 1989 at the age of 56.

At the time of the hearing, Barbara's only source of income was social security benefits in the amount of $5,964 per year. Barbara's affidavit listed her expenses as $1,934 per month. William had social security income of $12,093.60 per year, plus a pension from Granite City Steel for $18,745.80 per year, for a total income of $30,839.40 per year. In his affidavit, William listed his expenses as $1,858 per month. The court awarded William his entire pension, which the parties agreed was approximately 70% marital property. The court did not award Barbara maintenance.

After William retired, he worked part time as a real estate sales agent, but he did not report income from real estate sales in 2000, the year of the dissolution. William testified that he intended to return to selling real estate. The trial court found that both of the parties were

retired and that William was employed part time as a real estate agent but that his income from real estate sales was negligible. The parties' only other income is from a Merrill-Lynch account that generated $9,515 in interest in 1999. Of the interest paid on that account in 1999, $7,894 was tax exempt.

The parties had no significant debts other than their attorney fees. The court ordered each party to pay for his or her own attorney fees and costs.

The court awarded the debt-free marital home to Barbara. The home appraised for $83,000 shortly before the hearing.

The court awarded William a 1990 Bass Tracker boat and its motor and trailer, a 1990 Scanoe and all the related fishing equipment, a 1999 Chevrolet Suburban, and all the interest in all asbestos/personal-injury claims "except the roughly $250 that he indicated he held for [Barbara] and would give her after trial." The court found that under its division of property, William received personal property worth $30,800 more than the amount awarded to Barbara. The personal property awarded to Barbara consisted mainly of a 1995 Lincoln Town Car.

Each party claimed dissipation by the other, but the court did not find that either party had dissipated marital assets. Specifically, the court found as follows:

"6. In lieu of dissipation, the court finds that husband has received pre[ ]judgment distributions from the marital estate of approximately $7,800[,] being comprised of $6,000 in withdraws [*sic*] from the marital 'CMA' account and the additional $1,800 which has been deposited with a third party for the benefit of the husband.

7. The Court rejects the contention that the distribution of certain jewelry constitutes dissipation and finds that such transfer was a gift from husband to wife and then wife to child."

The court awarded Barbara all the Merrill-Lynch accounts, the total value of which was $223,000. The court also awarded Barbara a John Hancock annuity with a value of approximately $3,300. The court ordered the parties to equally divide their checking accounts.

On June 15, 2001, after arguments, the trial court denied William's posttrial motion. William now appeals.

## ANALYSIS

William argues that the trial court abused its discretion by awarding Barbara 84% of the total assets awarded. Particularly, William argues that the court did not follow the directive of the legislature to divide the property in "just proportions considering all relevant factors" (750 ILCS 5/503(d) (West 2000)). Barbara contends that the trial court's award, while unequal, reflects the fact that the court did not award her maintenance.

■ The division of property in dissolution actions is governed by section 503(d) of the Illinois Marriage and Dissolution of Marriage Act, which provides that in a dissolution proceeding, the court is to divide the parties' marital property without regard to marital misconduct and in just proportions considering all relevant factors. 750 ILCS 5/503(d) (West 2000). The relevant factors include each party's contribution to the marital estate, the dissipation of marital assets by either party, the value of the property assigned to each party, the duration of the marriage, the relevant economic circumstances of each party, "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties," whether maintenance is awarded to either party, and the reasonable opportunity of each spouse for the future acquisition of capital assets and income. 750 ILCS 5/503(d) (West 2000). Section 503(d) includes other factors, but none are relevant to the facts presented herein.

In explaining his ruling, the trial judge stated that he understood that he could have divided the property more equally but that, in order to do so equitably under the circumstances, he would have had to award Barbara maintenance, since her monthly income is so much lower than William's. During the hearing on William's posttrial motion, the trial court judge explained his reasons for not splitting the property equally and not awarding Barbara maintenance:

> "While that appears to be an equal distribution, the Court ultimately decided that such a distribution would be inequitable, not because of any preference for either of the parties, but it would fail to meet the Court's goal of permanently separating the lives of the parties as neatly and completely as possible.
>
> One of the primary problems the Court encountered in the case was that an equal division of the pension is not truly equal because it remains dependent on Mr. Gaumer's life. In the event he would pass, it would result in a sudden decline in Mrs. Gaumer's financial status without any doing on her part. ***
>
> *** One of the things the Court, therefore, looked at was using the real estate in lieu of any maintenance, which leaves Mr. Gaumer with approximately six thousand dollars a year additional money in social security [greater] than Mrs. Gaumer receives, which the Court believed in general terms would be sufficient to provide him approximately five hundred dollars a month towards rent.
>
> The real problem in the case was what to do with the equity of the house. I saw no easy or simple way to divide that, so the home was left with Mrs. Gaumer to make sure that both parties would have residential capacity. Unfortunately, given the age of the parties ***, the Court had to be concerned with the potential that

Mrs. Gaumer may significantly outlive Mr. Gaumer and that she will continue to have needs for her upkeep beyond his passing.
***

With that in mind, the Court will deny the posttrial motion. I realize that there are many other suggested outcomes that may well have been reasonably found by others, but I believe the judgment that I ultimately entered, given the unique circumstances of the two parties and particularly the unique circumstances of the pension in this case[—]that this was a reasonable resolution."

■ We find that the trial court's disposition of the parties' property is in just proportions considering all relevant factors. See 750 ILCS 5/503(d) (West 2000). William worked outside the home to acquire a secure pension, but Barbara worked at home, which supported William's efforts in earning that pension. The marriage was lengthy, and the parties are not young. Neither of them can look forward to earning even a moderate income through outside employment, so the distribution of their assets was the only realistic way to provide for their futures.

The trial court recognized that Barbara is in need of maintenance but that maintenance would cease upon William's death, potentially leaving Barbara without sufficient resources at the end of her life. The court also recognized that finality and a complete separation of the parties' lives are worthy goals for formerly married couples, goals that are more difficult to achieve the longer the parties have been married.

William argues that the distribution of the parties' property leaves William without funds sufficient to maintain the standard of living he enjoyed during the marriage. William contends that Barbara will be able to "go on with the lifestyle she had before dissolution, including all of the financial security she previously enjoyed," but that William has so little income that a "modest financial crisis could wipe him out." The record does not support this argument.

Under the court's order, Barbara's guaranteed income is less than $6,000 per year. She has the potential to earn interest income from the Merrill-Lynch accounts, but even if the accounts earn the same every year in the future, that will provide her with only about $9,500 additional income per year. Barbara listed her expenses at $1,934 per month. With the additional money from the Merrill-Lynch accounts, Barbara still has a deficit of more than $600 per month. If the Merrill-Lynch accounts are devalued on the stock market, her income will diminish further.

William, on the other hand, claimed expenses of $1,858 per month, and he has a monthly income of $2,570 per month, leaving him with an extra $712 per month, and more if he continues his work as a real

estate sales agent. The record indicates that Barbara is much more vulnerable to a "modest financial crisis" than William, since the majority of her income came from stock market investments.

The reasoning of this court in an earlier case is instructive herein: "The division of marital property in 'just proportions,' however, does not mean that the property must be divided with mathematical equality. [Citation.] An unequal division may be made where the court has properly applied the statute. [Citation.] In fact, an approximate equality is equitable, especially in longer marriages. [Citation.] *** Thus, the court has broad discretion under section 503(d) to make an equitable apportionment of marital property [citations], and abuse of discretion occurs only when no reasonable man could take the view adopted by the trial court. [Citation.] 'As we have stated countless times before, a trial court's resolution of property division is fettered only by the range of reason. [Citation.] ***.' In re Marriage of Siddens (1992), 225 Ill. App. 3d 496, 500, 588 N.E.2d 321, 324." In re Marriage of Eidson, 235 Ill. App. 3d 907, 911 (1992).

Applying that reasoning to the case at bar, we find that the trial court did not abuse its discretion in its division of the parties' property. The trial court clearly applied the relevant factors listed in section 503(d) and equitably divided the property.

## CONCLUSION

The judgment of the circuit court is affirmed.

Affirmed.

GOLDENHERSH, J., concurs.

JUSTICE WELCH, dissenting:

I do not believe that the trial court's distribution of property was equitable. Petitioner was awarded the parties' marital home (valued at $83,000), investment accounts (valued over $226,300), and about a third of the remaining marital property (which had a total value of approximately $100,000). This amounts to petitioner receiving nearly 500% more of the property than respondent. I agree with respondent's arguments that an 84% to 16% split of the property is not equitable. Although I acknowledge that the trial court did not award maintenance and awarded respondent his entire pension, which results in respondent's annual income being substantially higher than that of petitioner's, even considering the greater annual income awarded to respondent, I do not believe that an 84% to 16% split of the property is equitable. I believe that this lopsided division of property amounts

to an abuse of discretion and that the trial court should have made a better effort to evenly distribute the property such that both parties could begin their new lives as close as possible to the standard of living that each enjoyed during the marriage, even if this requires an award of maintenance. For these reasons, I must respectfully dissent.