JULIE HEIM *et al.*, Plaintiffs-Appellees, v. JUSTIN HERRICK *et al.*, Defendants (CTK, Inc., d/b/a The Northender, Defendant-Appellant).

Fourth District   No. 4—03—0678

Opinion filed December 5, 2003.

Andrew S. de Blank, of Knell & Kelly, L.L.C., of Peoria, for appellant.

Jon D. Robinson and James E. Peckert, both of Kehart, Robinson & Booth, of Decatur, for appellees.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiffs sued defendants, Eagle Food Centers, Inc., doing business as Eagle Food Center, No. 297 (Eagle), and CTK, Inc., doing business as the Northender (CTK), under the Liquor Control Act of 1934 (Dramshop Act) (235 ILCS 5/6—21(a) (West 2000)). While discovery was still under way, Eagle filed, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101 through 1330 (2000)). *In re Eagle Food Centers, Inc.,* No. 03—15299 (PSH). The filing of the bankruptcy petition automatically stayed all civil litigation against Eagle, including the present action. See 11 U.S.C. § 362(a)(1) (2000). CTK moved that the trial court stay further proceedings against it as well, to avoid the sole exposure to liability, if any. The trial court denied the motion, and CTK appeals, arguing that the ruling was an abuse of discretion. We affirm.

## I. BACKGROUND

In their first-amended complaint, which they filed on April 24, 2001, plaintiffs allege that on May 16, 2000, Justin Herrick was driving his Jeep Grand Cherokee in Decatur while intoxicated with liquor he had bought from Eagle and CTK. He rear-ended a car, causing it to veer off the road and strike three pedestrians on a sidewalk. Two of the pedestrians, Julie Heim and Patricia O'Connell, survived their injuries; the other pedestrian, Sharlis Helphinstine, did not. Plaintiffs are Julie and Patricia and their husbands, as well as Nancy Clapp, representative of the estates of Sharlis and her late husband, John Helphinstine. Plaintiffs first named both Eagle and CTK as defendants in the first-amended complaint.

Plaintiffs became aware of Eagle's and CTK's potential liability by taking Herrick's discovery deposition on April 6, 2001. He testified that on May 16, 2000, he bought a six-pack of beer from Eagle and began drinking it on an empty stomach. Later, when he bought miniature bottles of rum and a 40-ounce bottle of beer from CTK, he was already drunk from the beer he had bought from Eagle. After drinking two or three of the miniature rums and opening the 40-ounce bottle of beer, he rear-ended the car.

On April 24, 2003, two years after the filing of the first-amended complaint, "after [(as CTK says)] written and limited oral discovery had taken place," Eagle filed a notice of automatic stay based on its having filed a chapter 11 bankruptcy petition on April 7, 2003.

In its "Motion to Stay Proceedings Against CTK, Inc.," filed on June 20, 2003, CTK states:

"It is unknown *** whether [p]laintiffs have petitioned *** the federal bankruptcy court for a lift of the automatic stay [of] proceedings directed against Eagle. Until the stay is lifted and/or [sic] a determination is made by the bankruptcy court as to whether [p]laintiffs' claims against Eagle fall within or without the purview of the automatic stay ***, [p]laintiffs' claim alleging [dramshop] liability against CTK, Inc.[,] should and must similarly be stayed."

On July 18, 2003, the trial court entered a docket order stating as follows:

"1. These proceedings have been stayed until further order of the [c]ourt as to the [d]efendant, Eagle Foods, because Eagle Foods has filed [for] bankruptcy and an automatic stay is in effect.

2. The [d]efendant, CTK, has [moved] *** to stay the cause as to [CTK] because of the cause being stayed against Eagle Foods.

3. This is not the first time since the filing of this case that Eagle Foods has been in bankruptcy.

4. *** [P]otential harm *** might be imposed on the [p]laintiffs if they are not allowed to proceed against CTK.

5. CTK has failed to show clear and convincing circumstances [sic] that outweigh the potential harm to the [p]laintiff[s].

It shall be the [o]rder of the [c]ourt as follows:

A. The [']Motion to Stay Proceedings Against CTK['] is denied.

B. CTK's request that the court allow [it] to conduct discovery as to Eagle Foods is denied since that may be considered a violation of [the] bankruptcy stay."

This appeal followed.

## II. ANALYSIS

■ When a party appeals the trial court's denial of a motion to stay a lawsuit, we will regard the ruling as a denial of a request for a

preliminary injunction (*Allied Contracting Co. v. Bennett*, 110 Ill. App. 3d 310, 311, 442 N.E.2d 326, 327 (1982)), a type of interlocutory order that is appealable as of right (Official Reports Advance Sheet No. 5 (March 5, 2003), R. 307(a)(1), eff. January 1, 2003). If granting the stay might harm plaintiffs, CTK had to prove, by clear and convincing evidence, that denying the stay would inflict upon CTK an injustice and hardship greater than any potential harm to plaintiffs. See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595, 572 N.E.2d 1119, 1123 (1991). It was the trial court's prerogative to decide whether CTK had carried that burden, and we review the trial court's decision for an abuse of discretion. See *Zurich Insurance Co.*, 213 Ill. App. 3d at 594, 572 N.E.2d at 1122. Because the standard of review is deferential, our mere disagreement with the trial court is not grounds for reversal. See *Zurich Insurance Co.*, 213 Ill. App. 3d at 594-95, 572 N.E.2d at 1122. Instead, we ask "whether the [trial] court 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Zurich Insurance Co.*, 213 Ill. App. 3d at 595, 572 N.E.2d at 1122, quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898 (1986).

The trial court found that a stay would cause "potential harm" to plaintiffs. That finding is not unreasonable. CTK itself states in its brief: "[T]he *** accident resulted in significant injuries to Julie Heim and Patricia O'Connell, as well as resulting in the death of Sharlis Helphinstine." According to the first-amended complaint, all three pedestrians incurred medical expenses, which, one might infer, were substantial since the injuries were severe. The longer those and other damages remain unpaid, the greater the prejudice to plaintiffs.

■ CTK argues it would be clearly unjust to allow plaintiffs to proceed against CTK alone under the Dramshop Act. If not for the automatic stay, plaintiffs could recover the statutory maximum of damages from both CTK and Eagle as if they were a single dramshop. See *Darguzas v. Robinson*, 162 Ill. App. 3d 362, 365-66, 515 N.E.2d 451, 453 (1987). By naming both CTK and Eagle as defendants, plaintiffs put them in a position of shared liability. The automatic stay exposes CTK to the risk that it alone will incur liability for the full amount of damages under the Dramshop Act, even though most of the liquor that Herrick drank had come from Eagle, and he was already intoxicated when he procured the additional liquor from CTK. CTK argues that its inability, under Illinois law, to seek contribution from Eagle further exacerbates the injustice. See *Jodelis v. Harris*, 118 Ill. 2d 482, 486, 517 N.E.2d 1055, 1057 (1987) (because liability under the

Dramshop Act is nontort liability, no cause of action exists against a dramshop for contribution under the Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(a) (providing for contribution only "where [two] or more persons are *subject to liability in tort*" (emphasis added)))).

■ That the automatic stay caused *some* unfairness and hardship to CTK would not justify granting CTK a stay; the unfairness and hardship to CTK had to *clearly* outweigh the unfairness and hardship to plaintiffs. See *Zurich Insurance Co.*, 213 Ill. App. 3d at 595, 572 N.E.2d at 1123. The trial court weighed the relative inequities and hardships, and one could reasonably agree with its decision. Plaintiffs and CTK agree that even if the bankruptcy court lifted the automatic stay and plaintiffs recovered a judgment against both CTK and Eagle under the Dramshop Act, plaintiffs could collect the full amount of the judgment from CTK alone, if they chose, and none of it from Eagle. That CTK, in any event, could conceivably be forced to pay the full amount of a judgment entered against both it and Eagle somewhat blunts the edge of any injustice to CTK.

As plaintiffs also note, they could have named CTK alone as the sole defendant under the Dramshop Act without offending any principle of justice. If they had that option from the start, it cannot be unjust for them to proceed solely against CTK now.

By naming Eagle as a codefendant under the Dramshop Act, plaintiffs did not confer upon CTK a right to insist that Eagle remain a codefendant. The trial has not begun. Plaintiffs have the statutory right, without CTK's consent, to voluntarily dismiss their actions against Eagle and seek to recover from CTK alone under the Dramshop Act, and if they did so, CTK's complaints of injustice would be unavailing. See 735 ILCS 5/2—1009(a) (West 2002). Given that right, CTK will suffer no clear injustice if, because of the automatic stay, *over which plaintiffs have no control*, they proceed against CTK alone under the Dramshop Act.

CTK has had two years to seek discovery from Eagle and does not specify what additional information, if any, it needs from Eagle. Denying the motion for a stay does not preclude CTK from arguing to the jury that Eagle, rather than CTK, caused Herrick's intoxication.

We find no abuse of discretion in the denial of CTK's motion for a stay.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

COOK and McCULLOUGH, JJ., concur.